EXHIBIT A

## TABLE OF EVENTS, COUNTS AND DEFENDANTS

| EVENT | A | B | C | D | E | F | G | H | I | J | K | L | M |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| COUNTS | 1 2 3 / 4 5 / 6 7 / 8 9 / 10 11 | 12 | 13 / 14 / 15 | 16 | 17 / 18 | 19 | 20 | 21 / 22 / 23 | 24 / 25 / 26 / 27 | 28 / 29 | 30 | 31 / 32 | 33 |
| DEFENDANT | + | + | + | + | + | + | + | + | + | + | + | + | + |
| RIVAS | ★ | ★ | | | | | | ★ | ★ | | ★ | | ★ |
| ROAL | | ★ | ★ | | | | | ★ | ★ | | | ★ | ★ |
| WALTON | ★ | | ★ | ★ | | ★ | ★ | | | | | | |
| CARDONA | ★ | | | | | | | ★ | ★ | | | | |
| NEUMANN | ★ | ★ | | | | | | ★ | ★ | ★ | | ★ | ★ |
| ROLLOFF | ★ | ★ | | | ★ | ★ | | | | | | | |
| KELLY | | | ★ | | | | | | | | | | |
| MCCLEARY | | | | ★ | | ★ | | | | | | | |
| WINN | | | | | ★ | | | | | | | | |
| SMITH | | | | | | | | | | | ★ | | |
| CRUITT | | | | | | | | | | | ★ | | |
| CAPALDO | | | | | | | | | | | ★ | | |
| COLT | | | | | | | | | | | ★ | | |
| SIMMONS | | | | | | | | | | | ★ | | |

EXHIBIT B

EXTENSION OF TIME FOR RESPONSE - ADMINISTRATIVE REMEDY


DATE: MARCH 11, 2013



FROM: ADMINISTRATIVE REMEDY COORDINATOR
      CENTRAL OFFICE

TO  : ZACHARY ADAM CHESSER, 76715-083
      MARION USP    UNT: I    QTR: I01-006L



ADDITIONAL TIME IS NEEDED TO RESPOND TO THE CENTRAL OFFICE APPEAL
IDENTIFIED BELOW.  WE ARE EXTENDING THE TIME FOR RESPONSE AS PROVIDED
FOR IN THE ADMINISTRATIVE REMEDY PROGRAM STATEMENT.


REMEDY ID      : 715232-A1
DATE RECEIVED  : MARCH 5, 2013
RESPONSE DUE   : MAY 4, 2013
SUBJECT 1      : COMMUNICATION MANAGEMENT UNIT
SUBJECT 2      : OTHER COMPLAINT AGAINST STAFF


Exhibit B

Administrative Remedy - Informal Resolution
Marion, Illinois

Inmate's Name: Zachary Chesser    Reg. No. 76715-083    Unit: I    Date: 11/28/2012

NOTICE:    You are advised that prior to filing a Request for Administrative Remedy (BP-9), you MUST attempt to informally resolve your complaint through your counselor. Please follow the three (3) steps listed below.

1.   State your specific complaint: This complaint is filed against CMU staff, religious services, and general Marion staff for discriminatory acts and policies against Muslims. Staff are violating the RFRA, 1st and 14th Amendments by doing the following: 1) Prohibiting Muslims from calling the adhaan (call to prayer) specifically, which is a burden on our religious practice. There is no reason the Adhaan should be prohibited when other similar non-religious activity such as yelling when playing sports is not prohibited. 2) Staff refused to provide me with food which has been slaughtered in accordance with my religious practices generally (see att'd

2.   State what efforts you have made to informally resolve your complaint: Held numerous conversations with staff and I have previously filed on many of these issues.

3.   State what resolution you request: Make accomodations for each of these issues. And open investigations of staff for violating my rights.

        Inmate's Signature: _____    Date: 11/28/2012

4   Correctional Counselor's Comments (Steps to Resolve): _____

        See attached from the Chaplain

Counselor's Signature: _____    Date: 12/4/12

Unit Manager's Review: _____    Date: 12/4/12

| Staff | Received by Counselor from inmate | Attempted informal with inmate by Counselor | BP-9 given to inmate | BP-9 Delivered to Admin. Remedy Clerk |
|---|---|---|---|---|
| Date | 11/28 | 11/29 | | | 12/5/12 |
| Time | | | | | 1600 |
| Counselor | | ✓ | | | ✓ |

11/29

Attachment B

as well as specifically. This past 'Iid (and I have been actively engaged in attempting to resolve this issue, and I have also been constantly filing on other issues since its occurrence, so the issue of untimeliness does not apply), the food service department provided inmates in I-Unit with the wrong trays for their ceremonial meal. I had requested a fish-only tray, because it violates my religious belief to eat chicken which is not ritually slaughtered. Food service brought chicken trays instead of fish trays and when the issue was brought to their attention, they refused to fix it. Thus, on that day, I was denied access to any meal during that period, and I was forced to go hungry. This violates the policy on ceremonial meals. In fact, food service was supposed to provide common-fare trays according to the policy, so they were in violation of multiple policies. It is ridiculous that the BOP would refuse to provide a religious group with food in accordance' with its religious practices for their religious holiday. 4) The policy of refusing to accomodate our private fasts by not allowing us to eat our meals after sundown substantially burdens my religious practices. Even if there is a security concern in other units over this, there is no legitimate concern in I-Unit specifically due to the way our food is brought to us and the nature of inmates in this unit. There is no security concern if we wait with our food in the chow hall until sundown after dinner. 5)The contract Imam has heretical and extreme beliefs violate the teachings of mainstream Islam. He has even submitted an opinion in support of denying us our right of group prayer. His views and actions are considered blasphemous by mainstream Muslims, and imposing him upon us is no different than imposing a Mormon on the Catholic population or a Catholic on the Mormon population. He should be replaced by a Muslim with mainstream beliefs. 6) The policy of refu-sing to allow me and other Muslims to purchase books to aid us in learning the Arabic language places a substantial burden on our ability to practice our religion. We have to say certain prayers in Arabic and one cannot properly understand many aspects of the faith without understanding Arabic. Moreover, I am trying to attend a school which requires one to study Arabic and my son is likely to be raised speaking primarily or exclusively Arabic. This is a ridiculous rule. 7) The policy of not allowing religious classes or secular classes in which the language being taught is Arabic is a burden on the relig-ious practices of the Muslim inmates. This makes it impossible for inmates to learn how to understand and properly recite the Qur-an, which is recited in the Arabic language. It is not possible to learn pronunciation without a teacher. 8) The prohibition on inmates rolling up their pants is a violation of sincerely held Islamic beliefs which prohibit the wearing of any garment below one's ankles.

9) it violates my religious beliefs to eat food prepared for hol-idays other than those of my religion. Please allow me to receive the regular trays on holidays and please allow me to preemptively opt out of the Christmas bag as none of the holidays listed for Muslims are actual Islamic holidays, and that is just a cheap attempt to get around lawsuits about the BOP promoting Christianity.

Call to Prayer: A "call to prayer" is currently made in association with the authorized time for congregate prayer in the Communication Management Unit on Fridays at 1:00 p.m.  Congregate prayer is not authorized at any other time.  Other times for prayer are accommodated by the individual inmate having the liberty to pray in his cell.  An inmate involved in individual prayer in his cell may choose to include a "call to prayer" as part of his prayer, the "call to prayer" need only be quiet enough so as not to disturb other inmates.  Conduct, even if it is confined to an individual's cell or that is religious in nature, which disrupts or interferes with the security or orderly running of the institution or the Bureau of Prisons, is prohibited.

Ceremonial Meal: Religious Services staff was present when the liturgical meal trays were counted and loaded in the cart in Food Service.  Religious Services staff accompanied the cart from Food Service to its entrance into the CMU, and observed as it was passed to a liturgical meal participant to be delivered to the multi-purpose room.  The preparation and delivery of the meal trays was done in accordance with the established configuration provided by the Muslim inmates in the CMU.

Private Fasting: If the fast you are conducting is a private fast, the accommodation of all the related activities/necessities:  a pre and/or post-fast meal each day and the acquisition of halal food items for fast-related purposes, if desired, are not the immediate responsibility of Religious Services, Food Service, or Correctional Services.  Such elements essential to the conducting of a private fast are the responsibility of the individual inmate.

Contract Imam: The current contract Imam maintains the required credentials and has satisfied the necessary qualifications to deliver services to Muslim inmates at USP Marion.  The extent to which inmates utilize the contract Imam's availability, seek his counsel, or adhere to his teachings, is their individual prerogative.  The Religious Services library is made available to inmates as a supplemental resource for individualized study.

Personal Book Purchase: The issue is currently under review by the Executive Staff.  Until a decision is made on the issue, please avail yourself of the Arabic language books that have been placed in the CMU.

Arabic Language Classes: Resources for the study of the Arabic language on an individual basis have been purchased and placed in the CMU.  The possible organization of an Arabic language class should be directed to the Supervisor of Education.  See also: Administrative Remedy #695650-F1.

Rolling-up Pant Legs:  See Administrative Remedy #695650-F1.

Holiday Meal Participation: Contact the Food Service Administrator on this issue.


Holiday Bag: Inmate need only refuse a holiday bag when they are distributed.

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

| From: | Zachary Chesser | 76715-083 | I | USP Marion |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A- INMATE REQUEST** This complaint is filed against CMU staff, religious services, and general Marion staff for discriminatory acts and policies against Muslims. Staff are violating the RFRA, 1st and 14th Amendments, and RLUIPA by doing the following: 1) Prohibiting Muslims from calling the adhaan (call to prayer). CO Burton (SP?) prohibited me from calling the adhaan even quietly, so the reply to my BP-8 is contradicted by this action. 2) Staff refused to provide me with food which has been slaughtered in accordance with my religious practices generally (See Attached)...

Make accomodations for each of these issues and open investigations of staff for violating our rights.

12/5/12

DATE

SIGNATURE OF REQUESTER

**Part B- RESPONSE**

2012 DEC -7   AM 3:06

DATE

WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**ORIGINAL: RETURN TO INMATE**   CASE NUMBER: 715232-F

CASE NUMBER: _____

**Part C- RECEIPT**

Return to: _____
LAST NAME, FIRST, MIDDLE INITIAL         REG. NO.         UNIT         INSTITUTION

SUBJECT: 15Hm/34Am   Complat agant Staff - RE Rel Svc

12/6/12

DATE                                        RECIPIENT'S SIGNATURE (STAFF MEMBER)

USP LVN                    PRINTED ON RECYCLED PAPER

BP-229(13)
APRIL 1982

as well as specifically. This past 'iid (and I have been actively
engaged in attempting to resolve this issue, and I have also been
constantly filing on other issues since its occurrence, so the issue
of untimeliness does not apply), the food service department provided
inmates in I-Unit with the wrong trays for their ceremonial meal. I
had requested a fish-only tray, because it violates my religious belief
to eat chicken which is not ritually slaughtered. Food service brought
chicken trays instead of fish trays and when the issue was brought to
their attention, they refused to fix it. Thus, on that day, I was denied
access to any meal during that period, and I was forced to go hungry.
This violates the policy on ceremonial meals. In fact, food service
was supposed to provide common-fare trays according to the policy, so
they were in violation of multiple policies. It is ridiculous that the
BOP would refuse to provide a religious group with food in accordance'
with its religious practices for their religious holiday. 4) The policy
of refusing to accomodate our private fasts by not allowing us to eat
our meals after sundown substantially burdens my religious practices.
Even if there is a security concern in other units over this, there is
no legitimate concern in I-Unit specifically due to the way our food is
brought to us and the nature of inmates in this unit. There is no
security concern if we wait with our food in the chow hall until sundown
after dinner. 5)The contract Imam has heretical and extreme beliefs
violate the teachings of mainstream Islam. He has even submitted an
opinion in support of denying us our right of group prayer. His views
and actions are considered blasphemous by mainstream Muslims, and
imposing him upon us is no different than imposing a Mormon on the
Catholic population or a Catholic on the Mormon population. He should
be replaced by a Muslim with mainstream beliefs. 6) The policy of
refu-sing to allow me and other Muslims to purchase books to aid us
in learning the Arabic language places a substantial burden on our
ability to practice our religion. We have to say certain prayers in
Arabic and one cannot properly understand many aspects of the faith
without understanding Arabic. Moreover, I am trying to attend a school
which requires one to study Arabic and my son is likely to be raised
speaking primarily or exclusively Arabic. This is a ridiculous rule.
7) The policy of not allowing religious classes or secular classes
in which the language being taught is Arabic is a burden on the relig-
ious practices of the Muslim inmates. This makes it impossible for
inmates to learn how to understand and properly recite the Qur-an,
which is recited in the Arabic language. It is not possible to learn
pronunciation without a teacher. 8) The prohibition on inmates rolling
up their pants is a violation of sincerely held Islamic beliefs which
prohibit the wearing of any garment below one's ankles.

9) it violates my religious beliefs to eat food prepared for hol-
idays other than those of my religion. Please allow me to receive
the regular trays on holidays and please allow me to preemptively
opt out of the Christmas bag as none of the holidays listed for
Muslims are actual Islamic holidays, and that is just a cheap
attempt to get around lawsuits about the BOP promoting Christianity.

**U.S. Department of Justice**
**Federal Bureau of Prisons**

**Administrative Remedy**
**Part B - Response**

**Admin Remedy Number**: 715232-F1

This is in response to your Administrative Remedy receipted December 11, 2012, in which request remedy on nine separate issues that you feel collectively evidence religious discrimination and a violation of your religious rights.

According to Program Statement 5360.09, Religious Beliefs and Practices, section 1, part (a), "The Bureau of Prisons provides inmates of all faith groups with reasonable and equitable opportunities to pursue religious beliefs and practices, within the constraints of budgetary limitations and consistent with the security and orderly running of the institution and the Bureau of Prisons."

Call to Prayer: A "call to prayer" is currently made in association with the authorized time for congregate prayer in the Communication Management Unit on Fridays at 1:00 p.m. Congregate prayer is not authorized at any other time. Other times for prayer are accommodated by the individual inmate having the liberty to pray in his cell. An inmate involved in individual prayer in his cell may choose to include a "call to prayer" as part of his prayer, with this "call to prayer" needing only be quiet enough so as not to disturb other inmates. Conduct, even if it is confined to an individual's cell or that is religious in nature, which disrupts or interferes with the security or orderly running of the institution or the Bureau of Prisons, is prohibited.

Ceremonial Meal: Religious Services staff was present when the liturgical meal trays were sorted, counted and loaded in the cart in Food Service. Religious Services staff accompanied the cart from Food Service to its entrance into the CMU, and observed as it was passed to a liturgical meal participant to be delivered to the multi-purpose room. The preparation and delivery of the liturgical meal trays was accomplished in accordance with the requested configuration provided by the Muslim inmates in the CMU.

Private Fasting: If the fast you are conducting is a private fast, the accommodation of all the related activities/necessities include a pre and/or post-fast meal each day. The acquisition of Halal food items for fast-related purposes are not the immediate responsibility of Religious Services, Food Service, or Correctional Services. Such elements essential to the conducting of a private fast are the responsibility of the individual inmate. The established prohibition against inmates saving and removing Food Service food, for any reason, from the inmate dining area is a food safety issue and has no direct connection to existing policy regarding private fasts.

Contract Imam:  The current contract Muslim Imam maintains the required credentials and has satisfied the necessary qualifications to deliver services to Muslim inmates at USP Marion.  The extent to which individual inmates utilize the contract Imam's availability, seek his counsel, or adhere to his teachings, is their individual prerogative. The Religious Services library is made available to inmates as a supplemental resource for individualized study.

Personal Book Purchase:  The issue of inmates being allowed to purchase personal books in order to further their study of the Arabic language is currently under review by the Executive Staff.  Please avail yourself of the Arabic language-learning books and audio recitation sets that have been permanently placed in the CMU until a formal decision is made.

Arabic Language Classes:  Resources for the study of the Arabic language on an individual basis have been purchased and permanently placed in the CMU.  The issue of an Arabic language class, organized through Religious Services, was addressed with you in Administrative Remedy #695650-F1 and in Administrative Remedy #647667-F1. The policy and circumstances cited on the issue have not changed.

Rolling-up Pant Legs:  This issue was addressed with you in Administrative Remedy #695650-F1.  The policy cited on the issue has not changed.

Holiday Meal Participation:  Contact the Food Service Administrator concerning your desire to not eat the meals provided through Food Service, which coincide with Federal holidays.

Holiday Bag:  Inmates need to refuse the holiday bag when it is distributed if they do not desire to participate in the activity.

Accordingly, your Request for Administrative Remedy is denied on the first four issues, and the responses to the last five issues are for informational purposes only.  In the event you are not satisfied with this response and wish to appeal, you may do so within 20 calendar days of this response by submitting a BP-230(13) to the Regional Director, Federal Bureau of Prisons, North Central Regional Office, Gateway Complex, Tower II, 8th Floor, 400 State Avenue, Kansas City, Kansas 66101-2492.

12-21-12
Date

J. S. Walton, Warden

U.S. Department of Justice

Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: _Chesser, Zachary A_   _76715-083_   _____   _MAR_
       LAST NAME, FIRST, MIDDLE INITIAL     REG. NO.      UNIT     INSTITUTION

**Part A - REASON FOR APPEAL** This is appealed for every reason in my BP-9. Also, the Arabic books provided by USP Marion staff are esoteric grammars composed in the 1800's, as well as a book which was designed in the 1950's for professors to utilize. These books are not capable of providing the tools for self-education. Please instruct USP Marion to purchase books which are sufficient for this purpose such as a combination of the books "Arabic Language Course" by V. Abdur Rahim plus "Eastern Arabic" by Frank A. Rice and Majed F. Said or the Pimsleur series on spoken Eastern Arabic plus V. Abdur Rahim's book. Spoken and written Arabic are different which is why two products are necessary. The current selection does not provide a reasonable tool. Otherwise staff need to authorize Arabic language courses. Also, religious services is lying about the proper

(See attached)

trials being present for Id. Finally, the holiday bags are paid for with some of my money even if I refuse them.

_12/28/2012_              _ZZ_
DATE                        SIGNATURE OF REQUESTER

**Part B - RESPONSE**

RECEIVED
JAN - 3 2013
REGIONAL DIRECTOR'S OFFICE
NORTH CENTRAL REGION

_____      _____
DATE                             REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE                 CASE NUMBER: _715232-R1_

**Part C - RECEIPT**

                                      CASE NUMBER: _____

Return to: _____
       LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT       INSTITUTION

SUBJECT: _____

_____              _____
DATE                        SIGNATURE, RECIPIENT OF REGIONAL APPEAL

UPN LVN      PRINTED ON RECYCLED PAPER                            BP-230(13)
                                                     JUNE 2002

Exhibit A

Affidavit

On the religious holiday of
'Id al-Adha, Ofood services failed
to provide enough fish only trays,
so 4 inmates, (including me, went
without food.

Signed: ~~~~~~~
Zachary Chesser 76715-083
12/28/2012

Witnessed: ~~~~~~~
Ibrahim Elgabrowny
12/28/2012

**U.S. Department of Justice**
**Federal Bureau of Prisons**                                              **Regional Administrative Remedy Appeal**
**North Central Regional Office**                                                         **Part B - Response**

---

**Administrative Remedy Number**:   715232-R1

---

This is in response to your Regional Administrative Remedy Appeal received on January 3, 2013, in which you appeal the institutional remedies of nine separate issues that you feel collectively resulted in religious discrimination and violation of your religious rights.

Our review reveals that the Warden adequately responded to the first four issues and the responses to the last five issues as informational purposes only.   In addition, you have requested specific Arabic books which were already addressed in previous Administrative Remedies.

According to Program Statement 5360.09, Religious Beliefs and Practices, the "Bureau of Prisons provides inmates of all faith groups with reasonable and equitable opportunities to pursue religious beliefs and practices, within the constraints of budgetary limitations and consistent with the security and orderly running of the institution and the Bureau of Prisons."

Accordingly, your request for Regional Administrative Remedy Appeal is denied.

If you are dissatisfied with this response, you may appeal to the Office of General Counsel, Federal Bureau of Prisons, 320 First Street, NW, Washington, DC 20534.   Your appeal must be received in the Office of General Counsel within 30 days from the date of this response.

_1-31-13_
Date                                                        Paul M. Laird, Regional Director

EXHIBIT C

EXTENSION OF TIME FOR RESPONSE - ADMINISTRATIVE REMEDY


DATE: FEBRUARY 22, 2013


FROM: ADMINISTRATIVE REMEDY COORDINATOR
      CENTRAL OFFICE

TO  : ZACHARY ADAM CHESSER, 76715-083
      MARION USP    UNT: I    QTR: I01-006L


ADDITIONAL TIME IS NEEDED TO RESPOND TO THE CENTRAL OFFICE APPEAL
IDENTIFIED BELOW.  WE ARE EXTENDING THE TIME FOR RESPONSE AS PROVIDED
FOR IN THE ADMINISTRATIVE REMEDY PROGRAM STATEMENT.

REMEDY ID      : 708647-A1
DATE RECEIVED  : FEBRUARY 19, 2013
RESPONSE DUE   : APRIL 20, 2013
SUBJECT 1      : COMMUNICATION MANAGEMENT UNIT
SUBJECT 2      : EDUCATION - OTHER

Exhibit C

**Administrative Remedy - Informal Resolution**

Marion, Illinois

Inmate's Name: __Zachary Chesser__   Reg. No. __76715-083__   Unit: __I__   Date: __10/4/12__

NOTICE:   You are advised that prior to filing a Request for Administrative Remedy [BP-9], you MUST attempt to informally resolve your complaint through your counselor. Please follow the three (3) steps listed below.

1.   State your specific complaint: Warden Roal implemented a policy refusing to allow materials to learn any foreign language other than US Spanish. She fabricated a notion that it was a security threat. Arabic is the liturgical language of my religion, and barring me from learning it prevents me from being able to know the meanings in our rituals such as our daily prayers. Furthermore, my wife lives in an Arab nation so I cannot communicate with her or others without learning Arabic. My son will also likely grow up learning only Arabic, so I would not be able to speak with him. Finally, I am planning on getting a degree from a college which requires one to learn Arabic, so this prevents me from being able to complete this degree. I was also a Foreign Language major on the outside, so I could not complete that degree either.

2.   State what efforts you have made to informally resolve your complaint: Discussed it with staff.

3.   State what resolution you request: Allow materials to learn foreign languages or at least Arabic. Policies which are blatantly xenophobic are a violation of basic human dignity and should be abolished

Inmate's Signature: _____   Date: __10/04/12__

4.   Correctional Counselor's Comments (Steps to Resolve): Based on the Safety and Security of the CMU, foreign language education course/book are not allowed. This applies to ALL foreign languages

Counselor's Signature: _____   Date: __10/9/12__

Unit Manager's Review: _____   Date: __10/9/12__

| | Received by Counselor from inmate | Attempted informal with inmate by Counselor | BP-9 given to inmate | BP-9 Delivered to Admin. Remedy Clerk |
|---|---|---|---|---|
| Date 10-04-12 | 10/4 | | | 10/10/12 |
| Time | | | | 1600 |
| Counselor | | | | |

Attachment B

# REQUEST FOR ADMINISTRATIVE REMEDY

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

From: __Chesser, Zachary A__ __76715-083__ __1__ __USP Marion__
        LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.      UNIT        INSTITUTION

**Part A– INMATE REQUEST** Preventing inmates from learning foreign languages has absolutely nothing to do with the safety and security of the CMU. There is not a single incident any staff member can cite to back up this claim. Rather, this is a bigoted policy designed to keep Muslim inmates from learning Arabic, which is the liturgical language of their religion. No other foreign language was being pursued by any inmates in the CMU. My son will likely grow up speaking only Arabic, so this bigoted policy will prevent me from being able to communicate with him. It also prevents me from being able to understand basic aspects of my religion such as what we say in our prayers. It is also a sin in my religion not to learn Arabic. Moreover, the college I am working on attending requires Arabic courses to graduate. This policy is inherently bigoted, unjust, and a violation of BOP policy regarding the rejection of publications as well as US law. At least allow Arabic if you will not allow other languages as we have a vested interest in this. Further, explain how education in a foreign language could possibly effect security in a way that is unique to learning it.

____10/9/12____                                      _____
        DATE                                          SIGNATURE OF REQUESTER

**Part B– RESPONSE**

2012 OCT 11  PM 3: 17

_____                                    _____
    DATE                                          WARDEN OR REGIONAL DIRECTOR

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

**ORIGINAL: RETURN TO INMATE**                    CASE NUMBER: __708642-F1__

                                                  CASE NUMBER: _____

**Part C– RECEIPT**

Return to: _____
              LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.    UNIT      INSTITUTION

SUBJECT: __Regs matters to clear Arabic/Persian Lg__

__10-15-12__                                      _____
    DATE                                          RECIPIENT'S SIGNATURE (STAFF MEMBER)

USP LVN          PRINTED ON RECYCLED PAPER                              BP-229(13)
                                                                        APRIL 1982

**U.S. Department of Justice**
**Federal Bureau of Prisons**

**Administrative Remedy**
**Part B - Response**

---

**Admin Remedy Number**: 708647-F1

---

This is in response to your Administrative Remedy receipted October 11, 2012, wherein you request to be provided with materials to learn a foreign language.  Specifically, you request to be allowed to learn Arabic.

A review of your complaint reveals that the introduction of foreign language books is still being reviewed and considered by staff.  You can anticipate that a decision will be made after the first of the year.

Accordingly, your Request for Administrative Remedy is denied.  In the event you are not satisfied with this response and wish to appeal, you may do so within 20 calendar days of this response by submitting a BP-230(13) to the Regional Director, Federal Bureau of Prisons, North Central Regional Office, Gateway Complex, Tower II, 8th Floor, 400 State Avenue, Kansas City, Kansas 66101-2492.

1/3/13
_____
Date

For K N
_____
J. S. Walton, Warden

U.S. Department of Justice

Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: Chesser, Zachary A.    76715-083    1    USP Marion
       LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

**Part A - REASON FOR APPEAL**

Warden Roal violated clearly established Constitutional law with the ban as is warden Walton everyday he upholds it. It ought not require 4 months to investigate this issue. Accordingly, this is appealed for every reason in my BP-9

1/8/2013    BP9 Received: 1/8/2013        [signature]
DATE                                               SIGNATURE OF REQUESTER

**Part B - RESPONSE**

RECEIVED
JAN 14 2013
REGIONAL DIRECTOR'S OFFICE
NORTH CENTRAL REGION

_____        _____
           DATE                                              REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE                                  CASE NUMBER: 108647-R1

**Part C - RECEIPT**
                                                         CASE NUMBER: _____

Return to: _____
           LAST NAME, FIRST, MIDDLE INITIAL        REG. NO.        UNIT        INSTITUTION

SUBJECT: _____

_____        _____
           DATE                                       SIGNATURE, RECIPIENT OF REGIONAL APPEAL

UPN LVN        PRINTED ON RECYCLED PAPER

BP-230(13)
JUNE 2002

**U.S. Department of Justice**
**Federal Bureau of Prisons**                          **Regional Administrative Remedy Appeal**
**North Central Regional Office**                                        **Part B - Response**

---

**Administrative Remedy Number:**   708647-R1

---

This is in response to your Regional Administrative Remedy Appeal received in this office on January 14, 2013, wherein you claim you are being denied authorization to purchase an Arabic grammar book.   You further state the publication is to improve your Arabic language skills.

We have reviewed your appeal and the Warden's response dated January 3, 2013.   Pursuant to Program Statement 5266.11, <u>Incoming Publications</u>, "The Warden may reject a publication only if it is determined detrimental to the security, good order, or discipline of the institution or if it might facilitate criminal activity."   As stated in the Warden's response, the introduction of Arabic grammar publication is still being reviewed for approval from staff.   You present insufficient evidence that staff acted outside the scope of their duties.   There is no evidence of staff malfeasance.   Accordingly, the Warden's decision is supported.

Based on the above information, your Regional Administrative Remedy Appeal is for informational purposes only.

If you are dissatisfied with this response, you may appeal to the Office of General Counsel, Federal Bureau of Prisons, 320 First Street, NW, Washington, DC 20534.   Your appeal must be received in the Office of General Counsel within 30 days from the date of this response.

1/25/13
Date

Paul M. Laird, Regional Director

EXHIBIT D



U.S. Department of Justice

Federal Bureau of Investigation

In Reply, Please Refer to
File No.

601 4th St., N.W.
Washington, D.C. 20535

January 18, 2011

U.S. Department of Justice
United States Attorney, Eastern District of Virginia
2100 Jamieson Avenue
Alexandria, VA 22314
Attn: AUSA Gordon Kromberg

Dear AUSA Kromberg,

It has come to the attention of the Federal Bureau of Investigation (FBI) that a petition for custody of minor child Talhah Chesser has been filed in Prince William County Juvenile and Domestic Relations Court. The petition is purported to have been filed by the child's paternal grandmother, Barbara Chesser. It is further noted that the initial hearing for this matter is set for January 26, 2011.

Zachary Chesser, the child's father, and Proscovia Nzabanita, the child's mother, currently have legal custody of the child, with physical custody remaining with Nzabanita. It has also come to the attention of the FBI that Zachary Chesser and Proscovia Nzabanita have planned for the minor child to be removed from the United States by a third party prior to the January 26 court hearing, and possibly as early as January 19, 2011. It is the understanding of the FBI that there is no legal restriction on the child's movements.

The FBI is bringing this matter to the attention of the parties involved, as there is currently no mechanism to report it to the court of jurisdiction in Prince William County, as this is a civil matter. Presently, to the FBI's knowledge, no criminal statutes have been violated. Accordingly, the FBI will take no action to prevent the child from leaving the United States.

The FBI notes that Virginia Code 18.2-49.1 (Violation of court order regarding custody and visitation; penalty) does not currently apply to this situation. However, it may become relevant after the January 26 court hearing if the Juvenile and Domestic Relations Court orders the child be brought before the court. The Statute states the following:



U.S. Department of Justice

Federal Bureau of Investigation

In Reply, Please Refer to
File No.

    a.    Any person who knowingly, wrongfully and intentionally withholds a child from either of a child's parents or other legal guardian in a clear and significant violation of a court order respecting the custody or visitation of such child, provided such child is withheld outside the Commonwealth, is guilty of a Class 6 felony.

    b.    Any person who knowingly, wrongfully and intentionally engages in conduct that constitutes a clear and significant violation of a court order respecting the custody or visitation of a child is guilty of a Class 3 misdemeanor upon conviction of a first offense. (continued to included subsequent violations).

The FBI further notes that Virginia Code 18.2-47 (Abduction and kidnapping defined; punishment) does not currently apply. The Statute reads:

    a. Any person, who, by force, intimidation or deception, and without legal justification or excuse, seizes, takes, transports, detains or secretes the person of another, with the intent to deprive such other person of his personal liberty or to withhold or conceal him from any person, authority or institution lawfully entitled to his charge, shall be deemed guilty of "abduction"; but the provisions of this section shall not apply to any law-enforcement officer in the performance of his duty. The terms "abduction" and "kidnapping" shall be synonymous in this Code. Abduction for which no punishment is otherwise prescribed shall be punished as a Class 5 felony.

    b.    If such offence is committed by the parent of the person abducted and punishable as contempt of court in any proceeding then pending, the offense shall be a Class 1 misdemeanor in addition to being punishable as contempt of court. However, such offense, if committed by the parent of the person



U.S. Department of Justice

Federal Bureau of Investigation

In Reply, Please Refer to
File No.

abducted and punishable as contempt of court in any
proceeding then pending and the person abducted is
removed from the Commonwealth by the abducting parent,
shall be a Class 6 felony in addition to being
punishable as contempt of court.

The above statutes are brought to the attention of the
parties as Zachary Chesser and Proscovia Nzabanita have each
plead guilty to felony charges in the Eastern District of
Virginia.  Should a court of jurisdiction in Prince William
County Virginia issue an order with regard to the child, and
neither Zachary Chesser or Proscovia Nzabanita are able to
produce the child as part of the lawful order, there is potential
that the Prince William County Court may find either or both
parties in violation of the Court's order.  Furthermore, it may
be taken into consideration by the Commonwealth Attorney's Office
in Prince William County as to whether evidence exists to pursue
the above Statutes, or other applicable Statutes.  Should any of
the above occur, it may constitute a violation of the plea
agreements entered into by Zachary Chesser, Proscovia Nzabanita,
and the United States Government.

Specifically, in the "Order Setting Conditions of Release"
for Proscovia Nzabanita, "[t]he defendant shall not commit any
offense in violation of federal, state or local law while on
release in this case."  Under the terms of the plea agreement for
Nzabanita; "18.  Breach of the Plea Agreement and Remedies," the
first paragraph includes: "If the defendant withdraws from this
agreement, or commits or attempts to commit any additional
federal, state or local crimes, or intentionally gives material
false, incomplete, or misleading testimony or information, or
otherwise violates any provision of this agreement, then:

> a.   The United States will be released from its
> obligations under this agreement, including any
> obligation to seek a downward departure or a
> reduction in sentence.  The defendant, however, may
> not withdraw the guilty plea entered pursuant to
> this agreement;"



U.S. Department of Justice

Federal Bureau of Investigation

In Reply, Please Refer to
File No.

In regard to the plea agreement entered into by Zachary Chesser; "17. Breach of the Plea Agreement and Remedies," the first paragraph includes: "If the defendant withdraws from this agreement, or commits or attempts to commit any additional federal, state or local crimes, or intentionally gives material false, incomplete, or misleading testimony or information, or otherwise violates any provision of this agreement, then:

      a.    The United States will be released from its obligations under this agreement, including any obligation to seek a downward departure or a reduction in sentence. The defendant, however, may not withdraw the guilty plea entered pursuant to this agreement;"

It will be at the discretion of the United States Attorney's Office, Eastern District of Virginia, and the Commonwealth Attorney's Office, Prince William County Virginia, to determine what/if any criminal prosecutions may occur if the terms of either plea agreement are violated.

Sincerely,

George Piro
Special Agent in Charge

By:

Steven Hersem, Acting
Assistant Special Agent in Charge

EXHIBIT E

EXTENSION OF TIME FOR RESPONSE - ADMINISTRATIVE REMEDY


DATE: FEBRUARY 22, 2013



FROM: ADMINISTRATIVE REMEDY COORDINATOR
      CENTRAL OFFICE

TO  : ZACHARY ADAM CHESSER, 76715-083
      MARION USP     UNT: I    QTR: I01-006L



ADDITIONAL TIME IS NEEDED TO RESPOND TO THE CENTRAL OFFICE APPEAL
IDENTIFIED BELOW.  WE ARE EXTENDING THE TIME FOR RESPONSE AS PROVIDED
FOR IN THE ADMINISTRATIVE REMEDY PROGRAM STATEMENT.


REMEDY ID       : 714242-A1
DATE RECEIVED   : FEBRUARY 12, 2013
RESPONSE DUE    : APRIL 13, 2013
SUBJECT 1       : COMMUNICATION MANAGEMENT UNIT
SUBJECT 2       : OTHER COMPLAINT AGAINST STAFF

Exhibit E

5

Administrative Remedy - Informal Resolution
Marion, Illinois

Inmate's Name: __Zachary A. Chesser__  Reg. No. __76715-083__  Unit: __I__  Date: __11/20/2012__

NOTICE: You are advised that prior to filing a Request for Administrative Remedy (BP-9), you **MUST** attempt to informally resolve your complaint through your counselor. Please follow the three (3) steps listed below.

1. State your specific complaint: __Staff in I-Unit of USP Marion have engaged in continuous and ongoing acts of retaliation against myself and other inmates in violation of the First Amendment. Particularly, Case Manager Neuman, Intelligence Research Specialist Rivas, and Unit Manager Cardona have engaged in repeated activity to retaliate against me and others for various exercises of our First Amendment rights. In November, 2011 and in March or February of 2012, I was placed in the SHU pending an__ (see attached)

2. State what efforts you have made to informally resolve your complaint: __Tried discussing it with staff.__

3. State what resolution you request: __Investigate all of these individuals and prevent them from retaliating against inmates and denying them their rights. Also, suspend each of them.__

Inmate's Signature: _____  Date: __11/20/2012__

4. Correctional Counselor's Comments (Steps to Resolve): _Allegations of staff misconduct are taken seriously and this matter has been referred for further review. As this is an administrative matter you will not be apprised of any outcome._

Counselor's Signature: _____  Date: _11/28/12_

Unit Manager's Review: _____  Date: _11/28/12_

| Staff | Received by Counselor from inmate | Attempted informal with inmate by Counselor | BP-9 given to inmate | BP-9 Delivered to Admin. Remedy Clerk |
|---|---|---|---|---|
| Date 11/19 | 11/20 | | | 11/29/12 |
| Time | | | | 1600 |
| Counselor | | | | |

Attachment B

investigation for an alleged threat to my safety. However, when I was put in the SHU for a third time in May, 2012, Case Manager Neuman expressed that the real reason I was placed in the SHU on the two prior occassions was not for a threat assessment, but was in fact due to things I had written about the BOP and the management of the CMU which were published in a Congressional report and gained significant media attention. Neuman had explained to me that I was, at that time, being held in the SHU over a draft of an e-mail I was writing in which I was seeking an answer to a religious question (which also means that I was placed into segregation in violation of my First Amendment rights on that occassion). He then started laughing at me and told me that I was placed in the SHU before for my writings, and then he told me that "Maybe [I] should learn my lesson." Neuman reiterated this on a number of occassions, and Cardona supported him in a general way. Rivas was likely involved in that infringement on my rights as well as the two previous ones.

When I threatened to sue Cardona, Neuman, and then warden Wendy Roal, they began to discuss letting me out of the SHU, and became a bit apologetic for violating my rights on that third occassion. However, just a few days later, on 06/05/2012, Neuman and Cardona called me into the office and began questioning me about another e-mail I was writing. This e-mail was a dramatic account of the efforts of myself and two other inmates to adhere to our religious beliefs by making the call to prayer and praying in a group whilst being held in the SHU. Naturally, it reflected very badly on BOP employees in the CMU. Neuman said to me, "You just won't learn your lesson will you." Then, both he and Cardona threatened to place me in segregation permanently if I sent out the e-mail I was writing. They told me that they would just investigate me for different things as a fake way of holding me in the SHU permanently. I took this very seriously, because I had just been held in the SHU for a few weeks without the BOP even specifying a reason. I was simply given a paper saying I was being investigated, but it did not even bother to specify whether this was for a safety reason or due to a possible violation of policy on my part (which means they violated BOP policy by holding me in the SHU without specifying a legitimate reason). Thus, I agreed to delete this e-mail, so on 06/05/2012, I deleted this e-mail from my drafts and printed out what was accomplished in writing it. I would still like to send out this e-mail and much more material calling BOP policies into question, but I am afraid of retaliation, and therefore I cannot send it. This represents a continuing violation of my First Amendment rights. Also, the third occassion I was placed in the SHU represented a violation of my Fifth Amendment Due Process rights.


On or around 11/08/2012, at approximately 2 P.M., in the Program Area of I-Unit, IRS Rivas told an inmate that he was not going to give us four rolls of toilet paper until inmate Khallafalla took back a BP-8 he filed against Rivas. This effects all inmates in the unit, even though it is in retaliation against Khallafalla.

REQUEST FOR ADMINISTRATIVE REMEDY
Federal Bureau of Prisons

---

*Type or use ball-point pen. If attachments are needed, submit four copies. Additional instructions on reverse.*

| From: | Zachary Chesser | 76715-083 | I | USP MARION |
|---|---|---|---|---|
| | LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |

**Part A– INMATE REQUEST**

I am appealing this BP-8, in part, because it was answered by the same staff members whose misconduct I was reporting which is a Due Process violation. This is a separate issue.

Staff in I-Unit at USP Marion have engaged in continuous and ongoing violations of the First Amendment as well as violations related to the ability of inmates to conduct legal activities, effectively denying them, in some ways, access to the Court. Beginning in August, 2011, IRS Henry Rivas began giving me false instructions on how my attorney David Silek should fill out legal mail. My attorney then sent me legal mail filled out according to Rivas's instructions. Rivas proceeded to open and read this mail on grounds that it was not filled out correctly. This problem reached an apex when CM Milton Neuman actually gave false instructions to my attorney over the phone as well as to another attorney who was involved in the case I was partaking in. My attorney proceeded to fill out his legal mail in accordance with Neuman's instructions, so Rivas proceeded to open my attorney's letters which were filled out according to Neuman's instructions. Due to this, an important set

| 11/29/2012 | (SEE ATTACHED) Exhibits A+B | |
|---|---|---|
| DATE | | SIGNATURE OF REQUESTER |

**Part B– RESPONSE**

| | |
|---|---|
| DATE | WARDEN OR REGIONAL DIRECTOR |

*If dissatisfied with this response, you may appeal to the Regional Director. Your appeal must be received in the Regional Office within 20 calendar days of the date of this response.*

ORIGINAL: RETURN TO INMATE                    CASE NUMBER: 714344-F1

CASE NUMBER: _____

**Part C– RECEIPT**

Return to: _____

| LAST NAME, FIRST, MIDDLE INITIAL | REG. NO. | UNIT | INSTITUTION |
|---|---|---|---|

SUBJECT: 1st amd 3/22r  Complad agast Staff

| 12/3/12 | | |
|---|---|---|
| DATE | | RECIPIENT'S SIGNATURE (STAFF MEMBER) |

USP LVN                    PRINTED ON RECYCLED PAPER

BP-229(13)
APRIL 1982

Exhibit A

of exhibits in the case was rejected by Warden Roal on grounds that
they posed a threat to institutional security. I have documented
proof of all of this from an unbiased party which I will furnish
in the event of an investigation. This problem has continued now
that I have a new attorney, and his first communications were
opened and delayed despite clearly containing legal mail. When it
became clear to Rivas or Neuman that the letters I was receiving
were legal mail, they should have at least delivered them promptly,
but instead my mail was delayed slightly which caused me to miss
a deadline in the case. I did not learn that this deadline was
missed until recently even though the event took place a couple
of months ago. This is particularly problematic, because the FBI
has been passing information to the other party in the case I am
in the middle of in violation of the Privacy Act 522a(B). I also
suspect Rivas and Neuman are involved in this, or it could be
staff at teh Counterterrorism Unit in West Virginia. Additionally,
on 11/26/2012, Rivas refused to send mail which was marked special
mail to the publication "The Progressive" and the news radio
station "Pacifica Radio." He claimed they were not media organiz-
tions. However, both of these are clearly media organizations.
Please investigate this activity.

Regarding violations of the First Amendment, Neuman, Rivas, and
Unit Manager Steven Cardona have all engaged in repeated actions
designed to retaliate against me and others for various exercises
of our First Amendment rights. In November, 2011, and in March and
February of 2012, I was placed in the SHU pending an investigation
for an alleged threat to my safety. However, when I was put in the
SHU for a third time, in May, 2012, Case Manager Neuman expressed
that the real reason I was placed in the SHU on the two prior
occassions was not for a threat assessment, but was in fact due to
things I had written about the BOP and the management of the CMU
which were published in a Congressional Report which gained
significant media attention internationally. Neuman had explained
to me that I was, at that time (in May), being held in the SHU due
to a draft of an e-mail I was in the middle of writing in which
I was seeking an answer to a religious question. He then started
laughing at me and told me that I was placed in the SHU "before
for writing things," and then he told me that "maybe (I) should
learn my lesson." This conversation occurred between 12:15 PM
and 3:00 PM on 05/08/2012 in B-Range in I-Unit. At the same time
the previous day, Neuman said something similar, but attributed
it to Warden Roal. On 05/10/2012, at the same time as the other
conversations, Neuman laughed at me and told me that they could
always extend my time in the SHU if they wanted to when I asked
him when I was coming out. I would still like to send this e-mail,
but I am afraid of retaliation. Also, for evidence of how blatant
this all was, the BOP staff at USP Marion did not even bother
specifying a reason for why they were investigating me on that
occassion which violates the BOP's policy on holding inmates in
the SHU and Due Process.

Exhibit B

Shortly after being released from the SHU on that occassion, I was
called into the office by Steven Cardona and Milton Neuman. They
began threatening me over an e-mail I was drafting. Neuman said,
"You just won't learn your lesson will you." Cardona told me that
if I sent that e-mail, then he would place me in the SHU permanently
on false investigations, and that when they finished one false
investigation, they would just open another. This e-mail was about
the struggle of a few inmates to still pray in a group while in
the SHU, and I even began the e-mail with a disclaimer that I was
changing the names of those involved due to fears of retaliation.
This incident occurred on 06/05/2012, between 12:00 PM and 3:00 PM
in I-Unit's Program Area. I deleted the draft e-mail on the same
date. I still would like to send this e-mail, so this is an ongoing
issue.

Finally, on or around 11/08/2012, at approximately 2 PM, in the
Program Area of I-Unit, IRS Rivas told an inmate that he was not
going to give us four rolls of toilet paper until inmate
Khalafalla took back a BP-8 he filed against Rivas. This effects
all inmates in the unit, even though it is in retaliation against
Khalafalla.

Please fire these three employees and suspend them until an
investigation is finished.

2

**U.S. Department of Justice**
**Federal Bureau of Prisons**

**Administrative Remedy**
**Part B - Response**

---

**Admin Remedy Number**: 714242-F1

---

This is in response to your Request for Administrative Remedy receipted
November 30, 2012, wherein you make several accusations of staff misconduct.
Specifically, you state staff provided false instructions to you concerning legal mail, your
compact discs were rejected, and you were improperly placed in the Special Housing
Unit (SHU).   Additionally, you state a staff member refused to send sealed "special"
mail for you to Pacifica Radio and The Progressive and a staff member refused to give
you four rolls of toilet paper until another inmate withdrew a BP-8.   For relief, you
request several staff be "fired" and "suspended" until an investigation is completed.

A review of your request you have previously filed administrative remedies on two of the
above issues.  Please see remedy #674515-F1, concerning the legal mail issue, and
remedy #696998-F1, concerning the compact disc issue.   Absent new information my
response remains firm.

As to your accusation you were improperly placed in SHU.   A review of records reveals
you were placed in SHU for your protection pending a threat assessment concerning
documents you had written.   Upon the conclusion of the threat assessment you were
released back to the general population of I-unit.

Additionally, your attempts to send special mail to The Progressive and Pacifica Radio
were rejected by the Counter Terrorism Unit due to these media outlets not being
recognized as national media sources.

Inmates in I-unit are provided two rolls of toilet paper per week.   You are not allowed to
file an administrative remedy on behalf of another inmate; therefore, I will not comment
on your accusation.   You provide no proof nor do I find any proof of staff malfeasance.
No staff will be suspended or fired.

Accordingly, your Request for Administrative Remedy is denied.   In the event you are
not satisfied with this response and wish to appeal, you may do so within 20 calendar
days of this response by submitting a BP-230(13) to the Regional Director, Federal
Bureau of Prisons, North Central Regional Office, Gateway Complex, Tower II, 8th
Floor, 400 State Avenue, Kansas City, Kansas 66101-2492.

12-21-12
Date

J/S. Walton, Warden

U.S. Department of Justice

Federal Bureau of Prisons

**Regional Administrative Remedy Appeal**

Type or use ball-point pen. If attachments are needed, submit four copies. One copy of the completed BP-229(13) including any attachments must be submitted with this appeal.

From: Chesser, Zachary A    76475-083    1    USP Marion
         LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

**Part A - REASON FOR APPEAL** The Warden completely ignored the fact that staff threatened to place me in the SHU permanently over an e-mail I was writing, and staff can check their records for a draft e-mail I deleted on 06/05/2012 and see that it was not harmful, but was simply critical of the BOP. I even expressed fear of retaliation in the e-mail itself. He also failed to investigate my allegations regarding staff admissions of retaliatory behavior. Please check camera recordings at the times I listed for proof of these statements. Also, the issue of the toilet paper effected me, so even though it was a retaliatory act against inmate Khallafalla, the result was that all I-Unit inmates, including myself, were harmed, so I am not filing on anyone's behalf except my own. The admission of retaliatory behavior by Rivas in this regard occurred on 11/08/2012 in I-Units program area near audio recording devices. Finally, this is appealed for every reason in my ~~first request~~

12/28/2012    BP-9.   ~~...~~ BP-9 received 12/27/2012

DATE                                          SIGNATURE OF REQUESTER

**Part B - RESPONSE**



RECEIVED
JAN - 3 2013
REGIONAL DIRECTOR'S OFFICE
NORTH CENTRAL REGION

_____                  _____
       DATE                                     REGIONAL DIRECTOR

If dissatisfied with this response, you may appeal to the General Counsel. Your appeal must be received in the General Counsel's Office within 30 calendar days of the date of this response.

ORIGINAL: RETURN TO INMATE                CASE NUMBER: 714242-R1

**Part C - RECEIPT**

                                             CASE NUMBER: _____

Return to: _____
          LAST NAME, FIRST, MIDDLE INITIAL      REG. NO.      UNIT      INSTITUTION

SUBJECT: _____

_____             SIGNATURE, RECIPIENT OF REGIONAL APPEAL
       DATE

UPN IVN          PRINTED ON RECYCLED PAPER                             BP-230(13)
                                                                   JUNE 2002

**U.S. Department of Justice**
**Federal Bureau of Prisons**                    **Regional Administrative Remedy Appeal**
**North Central Regional Office**                              **Part B - Response**

**Administrative Remedy Number**:  714242-R1

This is in response to your Regional Administrative Remedy Appeal received in this office on
January 3, 2013, in which you allege staff violated your constitutional rights and failed to follow
several Bureau of Prisons Policies.   For relief, you request all staff involved be terminated.

A review of the information presented in your Regional Administrative Remedy Appeal has been
completed.   The Bureau of Prisons takes all allegations of staff misconduct seriously.   The
Warden's response adequately addresses all your concerns.   You have provided no additional
evidence to support your allegations that staff are acting unprofessionally or contrary to policy.   This
office concurs with the response you were provided by the Warden.

Based on the above information, your Regional Administrative Remedy Appeal is denied.

If you are dissatisfied with this response, you may appeal to the Office of General Counsel, Federal
Bureau of Prisons, 320 First Street, NW, Washington, DC 20534.   Your appeal must be received in
the Office of General Counsel within 30 days from the date of this response.

_1-22-13_
Date                                              Paul M. Laird, Regional Director

EXHIBIT F