IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| ZACHARY CHESSER, # 76715-083, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Case No. 13-cv-00456-JPG |
| ) | |
| HENRY RIVAS, JEFFREY WALTON, ) | |
| WENDY ROAL, STEVEN CARDONA, ) | |
| PAUL KELLY, MILTON NEUMANN, ) | |
| ROBERT ROLOFF, McCLEARY, ) | |
| WINN, LESLIE SMITH, APRIL CRUITT, ) | |
| T. CAPALDO, STEPHEN COLT, ) | |
| and J. SIMMONS, ) | |
| ) | |
| Defendants. ) | |

## **MEMORANDUM AND ORDER**

**GILBERT, District Judge:**

Plaintiff, who is an inmate in the United States Penitentiary in Marion ("Marion"), brings this action *pro se* for alleged violations of his constitutional rights by persons acting under the color of federal authority. *See Bivens v. Six Unknown Named Agents*, 403 U.S. 388 (1971). He was previously granted leave to proceed *in forma pauperis* (Doc. 4). Plaintiff is serving a twenty-five year sentence for communicating threats, soliciting others to threaten violence, and providing material support to terrorists. Plaintiff alleges that, during his incarceration in Marion, Defendants infringed on his rights under the Free Exercise, Establishment, Free Speech, and Free Association Clauses of the First Amendment, the Equal Protection component of the Fifth Amendment's Due Process Clause, and the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. §§ 2000bb *et seq*. (Doc. 1, p. 2). In addition, he raises conspiracy and retaliation claims. Plaintiff seeks compensatory and punitive damages (Doc. 1, pp. 43-44). He also seeks declaratory and injunctive relief (Doc. 1, pp. 2, 43-44).

**Merits Review Pursuant to 28 U.S.C. § 1915A**

In the complaint, Plaintiff raises more than twenty[1] claims against fourteen defendants. Under 28 U.S.C. § 1915A, the Court is required to conduct a prompt threshold review of the complaint. The Court must dismiss a complaint, or portion thereof, if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b). To avoid dismissal for failure to state a claim, the complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a). The Court is obliged to give Plaintiff's *pro se* allegations, however inartfully pleaded, a liberal construction. *See Erickson v. Pardus*, 551 U.S. 89, 94 (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). There is no heightened pleading requirement for *pro se* prisoner civil rights complaints. *Thomson v. Washington*, 362 F.3d 969, 970-71 (7th Cir. 2004). However, if a complaint pleads facts that show that a plaintiff does not have a claim, the complaint should be dismissed "without further ado." *Id.* at 970.

An action or claim is frivolous if "it lacks an arguable basis either in law or in fact." *Neitzke v. Williams*, 490 U.S. 319, 325 (1989). An action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Conversely, a complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *See Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011); *Brooks v.*

---

[1] Plaintiff actually includes more than thirty claims in his complaint. For purposes of this order, the Court addresses all of these claims as twenty-one distinct counts.

*Ross*, 578 F.3d 574, 581 (7th Cir. 2009). With this standard in mind, the Court will address each of Plaintiff's claims, in turn, below.

**I.	Religious Claims**

Plaintiff alleges that he is housed in Marion's Communications Management Unit ("CMU") (Doc. 1, p. 4). Marion's CMU is one of two units of its kind[2] in the country. It houses approximately forty inmates who, for one reason or another,[3] require monitoring of all incoming and outgoing communications (Doc. 1, pp. 4-5). The unit is subject to constant audio and video surveillance (Doc. 1, p. 5). The Federal Bureau of Prisons' ("BOP") Counterterrorism Unit ("CTU") oversees the CMU. The CTU is responsible for monitoring all communications entering and leaving the CMUs, coordinating foreign language translation services, and producing intelligence reports on terrorist inmates.

Plaintiff has been housed in Marion's CMU since May 2, 2011 (Doc. 1, p. 6). Like most inmates in Marion's CMU, Plaintiff is a Muslim (Doc. 1, p. 5). He is "very sincere in his adherence to his religion" (Doc. 1, p. 6). As for his religious claims, Plaintiff alleges that Defendants repeatedly violated his rights under the RFRA and the First and Fifth Amendments.

The RFRA prohibits the federal government from imposing a "substantial[] burden [on] a person's exercise of religion even if the burden results from a rule of general applicability," unless the government demonstrates that the burden "(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000bb-1(a), (b); *Cutter v. Wilkinson*, 544 U.S. 709, 714-15 (2005). The "RFRA protects more than mandated religious exercises; it protects all religious exercises, whether compelled by, or central to, religious belief." *Lind v. Warden, Fed. Corr.*

---

[2] The Federal Correctional Institution in Terre Haute, Indiana, also houses a CMU.
[3] According to the complaint, this group includes, but is not limited to, inmates who have engaged in terrorism, sexual predators who persist in their efforts to contact their victims, and inmates who have attempted to coordinate illegal activities using approved forms of communication (Doc. 1, p. 4).

*Inst., Terre Haute, Ind.*, 2013 WL 139699 (S.D. Ind. 2013) (Slip Copy).

With regard to the *Bivens* violations under the First Amendment, Plaintiff asserts alternative theories of liability, including claims under the Free Exercise, Establishment, Free Speech, and Free Association Clauses of the First Amendment. In *Bivens*, the United States Supreme Court "recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *See Bivens*, 403 U.S. 388 (1971); *Iqbal*, 556 U.S. 662, 675 (2009) (quoting *Corr. Serv. Corp. v. Malesko*, 534 U.S. 61, 66 (2001)). Implied causes of action are disfavored, however, so the Court has "been reluctant to extend *Bivens* liability 'to any new context or new category of defendants.'" *Malesko*, 534 U.S. at 68. While *Bivens* actions have addressed violations of the equal protection component of the Fifth Amendment's Due Process Clause, the United States Supreme Court has not found an implied damages remedy under the Free Exercise Clause. *See Davis v. Passman*, 442 U.S. 228 (1979). In fact, the Court "has declined to extend *Bivens* to a claim sounding in the First Amendment." *Iqbal*, 556 U.S. 662; *Bush v. Lucas*, 462 U.S. 367 (1983).

With regard to the Fifth Amendment equal protection claims under *Bivens*, a prisoner must show that he is treated differently than similarly-situated inmates based upon either a suspect classification or a fundamental right. Religion is a suspect classification. Plaintiff must then show that the decision at issue was motivated by intentional or purposeful discrimination. Prison officials may restrict the religious practices of inmates only if a deprivation is necessary to further legitimate penological interests. *See Iqbal*, 556 U.S. at 676-77.

A. <u>Ban on Arabic</u>

Plaintiff claims that he is obligated for religious reasons to learn the liturgical language of Islam (Doc. 1, p. 7). Defendant Roal banned the study or teaching of foreign languages in the CMU for security reasons before her departure from Marion (Doc. 1, p. 8). Pursuant to this ban,

4

inmates have been prohibited from purchasing books for use in learning another language. After Defendant Roal's departure, the ban against purchasing materials was lifted, but the ban against teaching foreign languages remained. Despite the broad language of the ban, Defendants Rivas, Cardona, Roloff, Neumann, and Walton enforced it only against Muslims.

Plaintiff claims that the ban violates his rights under the RFRA (Count 1), the First Amendment Free Exercise Clause (Count 2), the First Amendment Establishment Clause (Count 3), the First Amendment Free Association Clause (Count 4), and the Equal Protection Component of the Fifth Amendment Due Process Clause (Count 5) (Doc. 1, pp. 10-12). At this early stage in litigation, Plaintiff shall be allowed to proceed on Counts 1-5 against Defendants Roal, Rivas, Cardona, Roloff, Neumann, and Walton.

  B. <u>Ban on Shortened Pants</u>

According to his sincerely held religious beliefs, Plaintiff asserts that it is sinful to wear pants that extend below his ankles (Doc. 1, p. 13). Islam is the only religion known for this belief. A BOP policy explicitly prohibits inmates from wearing their pants above their ankles. At times, the CMU has enforced this ban. At times, it has not. Plaintiff claims that Defendants Rivas, Roal, Kelly, Neumann, and Roloff have prevented him from practicing this sincerely held religious belief by enforcing the ban against him (Doc. 1, pp. 13-14). He claims that this ban violates his rights under the First Amendment Free Exercise Clause (Count 6) (Doc. 1, p. 14). Plaintiff shall be allowed to proceed on Count 6 against Defendants Rivas, Roal, Kelly, Neumann, and Roloff.

  C. <u>Imposition of Holiday Meals</u>

Plaintiff sincerely believes that his religion forbids participation in non-Islamic holidays and festivals (Doc. 1, p. 14). Plaintiff has been placed on a "certified religious diet" because of his religious dietary requirements. On holidays, CMU inmates who are on the religious diet

receive a special meal for breakfast, lunch, and dinner. These meals consist of "seemingly better sounding meals [that] are served on other days to inmates on the religious diet" (Doc. 1, p. 15). Eating these holiday meals would violate Plaintiff's sincerely held religious beliefs.

Plaintiff attempted to address this issue with Defendants McCleary and Walton. Defendant Walton delegated authority to handle the matter to Defendant McCleary. Defendant McCleary initially agreed to accommodate Plaintiff's requests by providing the typical religious meal during one festivity. Thereafter, he stopped. In this lawsuit, Plaintiff claims that he must "either participate in a Christmas meal or go hungry" (Doc. 1, p. 16). This, he claims, serves only to promote Christianity.

Plaintiff now asserts claims against Defendants Walton and McCleary based on violations of the RFRA (Count 7), the First Amendment Free Exercise Clause (Count 8), and the First Amendment Establishment Clause (Count 9). At this early stage in litigation, Plaintiff has stated colorable claims against Defendants Walton and McCleary. Accordingly, he shall be allowed to proceed on Counts 7-9 against them.

D.    Denial of Liturgical Meal

Plaintiff also claims that Defendants McCleary and Roloff denied him a holiday meal that was consistent with his sincerely held religious beliefs (Doc. 1, p. 18). Plaintiff believes that the consumption of non-ritually slaughtered land animals violates the laws of his religion. When requesting a liturgical meal for an Islamic holiday in 2012, Plaintiff "made it very clear that no contamination between chicken and fish should occur"[4] (Doc. 1, p. 19). Defendant McCleary sent the wrong number of fish-only trays to the CMU. After learning of the error, Defendant McCleary failed to correct it. On the date of the incident, Defendant Roloff discussed the matter with Plaintiff and apologized for the oversight. He later denied his involvement.

---

[4] Although adherents of Muslim differ in their opinions about the permissibility of eating the regular meat of land animals in America, Plaintiff sincerely believes it is not permissible.

6

Defendants McCleary and Roloff's refusal to provide Plaintiff with a fish-only meal on the Islamic holiday "severely harmed [Plaintiff's] religious exercise." Plaintiff now asserts claims against both for violations of the First Amendment Free Exercise Clause (Count 10) and the Fifth Amendment Equal Protection Clause (Count 11). Plaintiff has articulated colorable claims against Defendants McCleary and Roloff under the First and Fifth Amendments, and he shall be allowed to proceed on Counts 10-11 against them.

E.  Christmas Bags

Defendants Winn and Walton oversee a program that provides inmates with bags of special foods and products for free shortly before Christmas each year (Doc. 1, p. 16). Both inmates and staff refer to the bags as "Christmas bags." There is no equivalent program during either of the two major Islamic holidays (Doc. 1, p. 17).

In 2011, Defendant Winn distributed these bags to Muslims, "using the 'Islamic New Year' and the day of 'Ashurah as justifications for giving Muslims the holiday bags around the same time as Christmas.'" Plaintiff alleges that "Islamic New Year" is not an Islamic holiday. Further, Ashurah is a holy day, during which Muslims fast. A "bag of 'goodies' distributed for that day would likely be considered a heresy" (Doc. 1, p. 17). Because Muslims comprise approximately ten percent of Marion's total inmate population, a "very significant portion of the prison's most religious inmates are being left out of a program" that serves inmates of another religion (Doc. 1, p. 18).

Plaintiff claims that Defendants Walton and Winn are violating his rights under the First Amendment Establishment Clause (Count 12). Plaintiff asserts that a similar bag must be provided during one of Islam's two holidays, or all holiday bag distributions should cease. Plaintiff has articulated a colorable First Amendment claim against Defendants Walton and Winn, and he shall be allowed to proceed on Count 12 against them.

F.   Contract Imam

Defendants Walton and Roloff are in charge of hiring a contract Imam at Marion (Doc. 1, pp. 21-22). Marion currently makes only one Islamic contractor available to provide religious guidance to Muslim inmates (Doc. 1, p. 20). This individual is from an obscure sect, which subscribes to beliefs that orthodox Muslims consider "heretical and blasphemous." Plaintiff considers the Islamic contractor to be "an extreme heretic who cannot be sought for religious advice or utilized for any religious purpose" (Doc. 1, p. 21). Plaintiff sincerely believes that having access to a trained religious professional with similar beliefs is an integral part of his practice (Doc. 1, p. 21). He requests the appointment of any qualified individual with mainstream beliefs.

Plaintiff maintains that Defendants Walton and Roloff's failure to provide a qualified Imam violates Plaintiff's rights under the RFRA (Count 13) (Doc. 1, p. 22). Plaintiff has articulated a colorable RFRA claim against Defendants Walton and Roloff and shall be allowed to proceed on Count 13.

G.   Personal Fasts

Plaintiff's religion highly recommends fasting, from sunrise to sunset, on certain days (Doc. 1, p. 22). Defendant Walton has declined to provide Plaintiff with any way of breaking his fast. Plaintiff must either smuggle food from the chow hall, in order to eat it at the prescribed times, or buy his own food. The current policy substantially burdens Plaintiff's sincerely held religious practice of fasting. Plaintiff claims that Defendant Walton's policy of not providing any means of consuming prison food to break these fasts violates Plaintiff's rights under the RFRA (Count 14). Plaintiff has articulated a colorable RFRA claim against Defendant Walton, and he shall be allowed to proceed on Count 14 at this stage.

## II. Retaliation/Conspiracy Claims

Prisoners have a First Amendment right to free speech. *See Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 125 (1977); *Martin v. Brewer,* 830 F.2d 76, 77 (7th Cir. 1987). Restrictions on that right will be upheld only if they are "reasonably related to legitimate penological interests." *See Thornburgh v. Abbott,* 490 U.S. 401, 413 (1989) (citing *Turner v. Safley,* 482 U.S. 78, 89 (1987)); *Massey v. Wheeler,* 221 F.3d 1030, 1035 (7th Cir. 2000). Further, prison officials may not retaliate against an inmate for exercising his First Amendment rights, even if their actions would not independently violate the Constitution. *See Zimmerman v. Tribble,* 226 F.3d 568, 573 (7th Cir. 2000); *DeWalt v. Carter,* 224 F.3d 607, 618 (7th Cir. 2000) ("a prison official may not retaliate against a prisoner because that prisoner filed a grievance"); *Babcock v. White,* 102 F.3d 267, 275 (7th Cir. 1996) (retaliatory transfer); *Higgason v. Farley*, 83 F.3d 807, 810 (7th Cir. 1996) (retaliation for filing lawsuit); *Murphy v. Lane*, 833 F.2d 106, 108-09 (7th Cir. 1987) (per curiam) (retaliation for filing suit). "A complaint states a claim for retaliation when it sets forth 'a chronology of events from which retaliation may plausibly be inferred.'" *Zimmerman,* 226 F.3d at 573 (citation omitted).

### A. Senate Report, Religious Question, & SHU Retaliation

Plaintiff describes in great detail several events giving rise to retaliation claims against Defendants Rivas, Roal, Neumann, and Cardona (Doc. 1, pp. 24-35). Plaintiff alleges that Defendants Rivas, Roal, and Neumann placed him in segregation in November 2011 in retaliation for writing letters to Seamus Hughes, a top counterterrorism advisor to the Senate Committee on Homeland Security and Governmental Affairs (Count 15) (Doc. 1, pp. 24-29). Plaintiff claims that Defendants Rivas, Roal, Cardona, and Neumann also placed him in segregation in May 2012 for drafting an email seeking religious advice (Count 16) (Doc. 1, pp. 30-33). Finally, Plaintiff claims that in June 2012 Defendants Cardona and Neuumann

9

threatened to keep him in segregation and investigate him "forever" if Plaintiff decided to send an email he drafted documenting the CMU's practices of prohibiting group prayer (Count 17) (Doc. 1, pp. 33-34). Plaintiff did not send the email because of the threats. These acts, Plaintiff claims, violated his First Amendment rights.

Plaintiff previously filed an action in this Court, in which he asserted retaliation claims against numerous defendants. *See Chesser v. Walton et al.*, Case No. 12-cv-001198 (S.D. Ill. 2012) ("*Chesser I*"). This action is now pending before the Court. The Court allowed Plaintiff to proceed on his retaliation claims against Defendants Cardona and Neumann. Plaintiff's retaliation claims were dismissed without prejudice as to all other defendants. Plaintiff now attempts to expand his retaliation claims in this matter, to include additional acts and defendants. Plaintiff could have filed an amended complaint in *Chesser I* to accomplish this goal. However, because his retaliation claims were dismissed without prejudice in *Chesser I*, the Court will allow him to proceed on these claims in this case for the time being. Accordingly, Plaintiff shall be allowed to proceed on Counts 15-17.

B.  Interference With Mail & Emails

Plaintiff claims that Defendants Rivas, Roal, and Neumann interfered with his mail, in violation of his First Amendment rights (Count 18) (Doc. 1, pp. 26, 41-42). These defendants tampered with Plaintiff's mail and even rejected it. Some of this mail was legal in nature and negatively impacted a child custody case involving Plaintiff's minor child. Plaintiff claims that Defendants Rivas, Roal, and Neumann conspired to mislead him about the proper transmission of legal mail (Doc. 1, p. 42). They opened and read his legal mail, in violation of his First Amendment rights.

Plaintiff also experienced delays of up to three months on outgoing emails addressing child custody issues (Count 19) (Doc. 1, p. 36). Emails that Plaintiff sent addressing events in

the media were often delayed for several weeks. These delays occurred without warning. Based on their job descriptions, Plaintiff maintains that Defendants Rivas, Smith, Cruitt, Capaldo, Colt, and Simmons conspired to retaliate against Plaintiff by interfering with and delaying his communications, in violation of his First Amendment rights.

Plaintiff shall be allowed to proceed on his claims that Defendants Rivas, Roal, and Neumann interfered with his mail as a retaliation claim (Count 18). Plaintiff shall not be allowed to proceed on his claim that Defendants Rivas, Smith, Cruitt, Capaldo, Colt, and Simmons delayed his emails (Count 19). Although the Supreme Court has upheld as constitutional the censoring of "legal mail" by opening it in the inmate's presence, the inadvertent or negligent opening of an occasional legal letter is not actionable. *See, e.g., Wolff v. McDonnell,* 418 U.S. 539, 576-577 (1974); *Bryant v. Winston*, 750 F. Supp. 733 (E.D. Va. 1990). Similarly, an occasional delay of emails does not rise to the level of a constitutional violation. This claim shall be dismissed without prejudice.

Plaintiff has failed to state a conspiracy claim against these defendants for the same reasons he failed to state a conspiracy claim against the defendants in *Chesser I* (Count 20). Under the intracorporate conspiracy doctrine, a conspiracy claim "cannot exist solely between members of the same entity." *Payton v. Rush Presbyterian-St. Luke's Med. Ctr.,* 184 F.3d 623, 632 (7th Cir. 1999). Plaintiff has named as defendants members of the same entity, the BOP. Therefore, the defendants cannot be sued for conspiracy. *See id. See also Wright v. Ill. Dep't of Children & Family Servs.*, 40 F.3d 1492, 1508 (7th Cir. 1994).[5] Accordingly, Plaintiff's conspiracy claims shall be dismissed with prejudice.

In summary, Plaintiff shall be allowed to proceed on Count 18 against Defendants Rivas,

---

[5] While *Wright* focused on corporate managers, nothing in its reasoning precludes application of this doctrine to supervisors and subordinates in a government entity, as long as all are working in the entity's interest. *Id.* at 633.

Roal, and Neumann. Count 19 against Defendants Rivas, Smith, Cruitt, Capaldo, Colt, and Simmons shall be dismissed without prejudice. Count 20 shall be dismissed with prejudice.

### III. Access to Courts Claim

The Seventh Circuit uses a two-part test to decide if prison administrators have violated the right of access to the courts. *Lehn v. Holmes*, 364 F.3d 862, 868 (7th Cir. 2004). First, the prisoner must show that prison officials failed "to assist in the preparation and filing of meaningful legal papers by providing prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Jenkins v. Lane,* 977 F.2d 266, 268 (7th Cir. 1992) (quoting *Bounds v. Smith*, 430 U.S. 817, 828 (1977)). Second, he must be able to show "some quantum of detriment caused by the challenged conduct of state officials resulting in the interruption and/or delay of plaintiff's pending or contemplated litigation." *Alston v. DeBruyn,* 13 F.3d 1036, 1041 (7th Cir. 1994); *see also Lehn*, 364 F. 3d at 868. That means that a detriment must exist, a detriment resulting from illegal conduct that affects litigation. It does not mean that any delay is a detriment. *Kincaid v. Vail*, 969 F.2d 594, 603 (7th Cir. 1992). Regardless of the length of an alleged delay, a prisoner must show actual substantial prejudice to specific litigation. *Kincaid,* 969 F.2d at 603.

To state a claim, a plaintiff must explain "the connection between the alleged denial of access to legal materials and an inability to pursue a legitimate challenge to a conviction, sentence, or prison conditions," *Ortiz v. Downey*, 561 F.3d 664, 671 (7th Cir. 2009) (internal quotation and citation omitted); *accord Guajardo Palma v. Martinson*, 622 F.3d 801, 805-06 (7th Cir. 2010). This requires Plaintiff to identify the underlying claim that was lost. *See Christopher v. Harbury*, 536 U.S. 403, 416 (2002); *Steidl v. Fermon*, 494 F.3d 623, 633 (7th Cir. 2007).

Plaintiff claims that he has been denied access to the discovery materials in his criminal

case since July 2010 (Count 21) (Doc. 1, p. 37). He needs this information for his child custody case and for his preparation of a petition for writ of habeas corpus. Most of the information is available in electronic form and on the internet. Although Defendant Neumann initially granted Plaintiff's attorneys permission to send a copy of the hard drive containing the discovery to Plaintiff, Defendant Roal rejected the hard drive after determining that Defendant Neumann had no authority to grant the request. Defendant Roal later approved the request, but again rejected the hard drive upon its arrival at the prison because it was not on a compact disc (Doc. 1, p. 38). When Plaintiff's attorneys sent the information on fifteen compact discs, Defendant Roal again rejected the discovery, claiming that it "threatened security" (Doc. 1, p. 38). By denying Plaintiff access to this information, Defendants Neumann and Roal have prevented Plaintiff from evaluating or filing a petition for writ of habeas corpus (Doc. 1, pp. 38-39). They have also infringed on his First Amendment rights by censoring his discovery materials (Doc. 1, p. 39). Plaintiff has stated a colorable access to courts claim (Count 21) against Defendants Neumann and Roal, and he shall be allowed to proceed on Count 21 against them.

## Disposition

**COUNT 19** is **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted. **COUNT 20** is **DISMISSED** with prejudice for failure to state a claim upon which relief may be granted.

The following **DEFENDANTS** are **DISMISSED** from this action without prejudice: **SMITH, CRUITT, CAPALDO, COLT,** and **SIMMONS**.

As to **COUNTS 1-18** and **21**, the Clerk of Court is **DIRECTED** to complete, on Plaintiff's behalf, a summons and form USM-285 for service of process on Defendants **RIVAS, WALTON, ROAL, CARDONA, KELLY, NEUMANN**, **ROLOFF, McCLEARY,** and **WINN**; the Clerk shall issue the completed summons. The United States Marshal **SHALL** serve

Defendants **RIVAS, WALTON, ROAL, CARDONA, KELLY, NEUMANN**, **ROLOFF, McCLEARY,** and **WINN** pursuant to Rule 4(e) of the Federal Rules of Civil Procedure. All costs of service shall be advanced by the United States, and the Clerk shall provide all necessary materials and copies to the United States Marshals Service.

In addition, pursuant to Federal Rule of Civil Procedure 4(i), the Clerk shall (1) personally deliver to or send by registered or certified mail addressed to the civil-process clerk at the office of the United States Attorney for the Southern District of Illinois a copy of the summons, the complaint, and this Memorandum and Order; and (2) send by registered or certified mail to the Attorney General of the United States at Washington, D.C., a copy of the summons, the complaint, and this Memorandum and Order.

It is **FURTHER ORDERED** that Plaintiff shall serve upon Defendants, or if an appearance has been entered by counsel, upon that attorney, a copy of every pleading or other document submitted for consideration by this Court. Plaintiff shall include with the original paper to be filed a certificate stating the date that a true and correct copy of the document was mailed to each defendant or counsel. Any paper received by a district judge or a magistrate judge which has not been filed with the Clerk or which fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Philip M. Frazier** for further pre-trial proceedings.

Further, this entire matter shall be **REFERRED** to United States Magistrate Judge Frazier for disposition, pursuant to Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *if all parties consent to such a referral.*

If judgment is rendered against Plaintiff, and the judgment includes the payment of costs under § 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted.  See 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1).

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  See FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

**DATED:  June 11, 2013**

                                                          s/J. Phil Gilbert
                                                          **U.S. District Judge**