## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | | |
|---|---|---|
| ZACHARY CHESSER, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Case No. 3:13-456-JPG-PMF** |
| | ) | |
| HENRY RIVAS, et al., | ) | |
| | ) | |
| **Defendants.** | ) | |

### REPORT AND RECOMMENDATION

**FRAZIER, Magistrate Judge:**

Before the Court are defendants' motions for partial summary judgment and plaintiff's motion to consider judgment on the responses (Doc. Nos. 112, 113, 138, 186). The motions are opposed and supplemented (Doc. Nos. 132, 179 - 180, 182 - 183, 187, 189). A reply is on file (Doc. No. 137).

This action was brought by plaintiff Zachary Chesser, an inmate currently housed at ADX-Florence, Colorado. Chesser challenges some of the conditions he was exposed to while he was assigned to a communication management housing unit (CMU) at USP-Marion. The Bureau of Prisons operates CMUs for more intense monitoring of written correspondence, telephone communication, visiting limitations. 28 C.F.R. Part 540, Subpart J. As the case stands, Chesser's remaining claims are that he was deprived of rights protected by the Religious Freedom Restoration Act (Counts 1, 13, 14), the free exercise clause of the First Amendment (Counts 2, 6), the access to courts clause of the First Amendment (Count 21), and the equal protection clause of the Fifth Amendment (Counts 5, 23). These claims are currently pending against defendants Henry Rivas, Jeffrey Walton, Wendy Roal, Steven Cardona, Milton Neumann, and Robert Roloff.

Summary judgment will be entered if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law. Fed. R. Civ. P.

56(a).   The facts and all reasonable inferences are drawn in favor of the nonmoving party.   *Ault v. Speicher*, 634 F.3d 942, 945 (7th Cir. 2011).   Consistent with the Rule governing summary judgment, the undersigned has considered factual positions that are well-supported by citation to particular materials in the record and are or can be presented in a form that would be admissible at trial.   Fed. R. Civ. P. 56(c)(1), (2), (4).   The Court may grant summary judgment for a nonmovant only after giving notice and a reasonable time to respond.   Fed. R. Civ. P. 56(f).

## I.      Religious Freedom Restoration Act Claims

In Counts 1, 13, and 14, Chesser alleges that these defendants imposed a substantial burden on his efforts to practice his sincere religious beliefs by preventing him from teaching and learning Arabic, failing to provide access to guidance from a qualified Imam, and by failing to accommodate some of his religious fasts.   Defendants Walton, Roal, Neumann, Cardona, Rivas, and Roloff seek a finding that these claims are moot (Doc. No. 113).   They reason that the RFRA permits an award of injunctive relief but not money damages, and that injunctive relief is not available to Chesser because he has been transferred out of the Marion CMU and has not shown that retransfer to the CMU at USP-Marion is likely.   Plaintiff responds that he is almost guaranteed to be returned to the Marion CMU within 12 to 24 months.   His expectations arise from his ties to terrorism, the criteria governing Bureau of Prisons assignments to a CMU, and his own hostile relationship with an inmate believed to be assigned to the only other CMR at Terre Haute (Doc. No. 132, 133).

Chesser appears to meet the current criteria for CMU designation.   28 C.F.R. § 540.201. He was assigned to the Marion CMU on May 2, 2011, and remained there until his transfer to ADX-Florence on June 2, 2014.   The ADX has a set program for progressive steps towards a

2

transfer to a less secure facility, which can be accomplished within 12 months.   When he filed his response, Chesser anticipated a transfer back to a CMU by June, 2015.   As of July, 2016, he remains at ADX-Florence.

Under Article III, § 2 of the Constitution, federal court jurisdiction is limited to "actual, ongoing controversies."   *Honig v. Doe*, 484 U.S. 305, 317 (1988).   When an inmate is transferred from one prison facility to another, his claim for prospective injunctive relief is moot, absent a finding that he is likely to be retransferred.   *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996).

As noted above, Chesser is currently housed at the ADX in Florence, Colorado. Defendant Rivas retired from his position with the Bureau of Prisons in November or December, 2014 (Doc. Nos. 112-1, p. 1; 138-1, p. 1).   Defendant Roal retired in September, 2013 (Doc. No. 138-4, p. 1).   Defendant Neumann now holds the position of case management coordinator at USP-Marion (Doc. No. 138-5, p. 1).   When this action was filed, he was identified as the case manager of the CMU (Doc. No. 1).   Steven Cardona is the jail administrator at USP-Atlanta (Doc. No. 138-6, p. 1).   Defendant Roloff is the Chaplain at the Federal Correctional Complex in Terre Haute, Indiana.

As of June 2, 2014, the RFRA disputes between Chesser, Rivas, Walton, Roal, Cardona, Neumann, and Roloff no longer exist, as the parties are now in different locations, are either retired, or have taken different job assignments.   Any decision about plaintiff's RFRA rights to prospective injunctive relief in the Marion CMU would amount to an advisory opinion on hypothetical facts.   While a transfer back to the CMU at USP-Marion remains a possibility, the Court cannot conclude that Chesser is likely to return and face conditions that closely resemble those he experienced in the CMU between 2011 and 2014.   Counts 1, 13, and 14 are moot.

## II.      Bivens Claims – First Amendment Free Exercise

In Counts 2 and 6, Chesser seeks a *Bivens* remedy for restrictions on his religious expression by teaching and learning Arabic and wearing shortened pants.  Because *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), fashioned a remedy for damages, the defendants seek a ruling in their favor on their qualified immunity defense.   They reply on the declaration of defendant Robert Roloff, who describes restrictions on language education programs and self-study of foreign languages, as well as restrictions against permanent or temporary alteration of uniforms.  Chesser responds that most of the information offered by Roloff is not admissible in evidence or amounts to unsupported opinion or legal conclusion (Doc. No. 132).

In considering whether these defendants are entitled to qualified immunity, the Court considers (1) whether these defendants violated Chesser's First Amendment free exercise rights and (2) whether that right was clearly established at the time of the violation.  *Pearson v. Callahan*, 555 U.S. 223, 231 (2009).   The contours of the right violated must be sufficiently clear that a reasonable official would understand that his/her conduct violates the right in question and that the unlawfulness of the act is apparent.  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  The preexisting law recognizing the right may come from the Supreme Court and the controlling circuit; alternatively, the legal survey may be broadened to detect a trend based on all relevant case law.  *Denius v. Dunlap*, 209 F.3d 944, 950 (7th Cir. 2000); *Cleveland-Perdue v. Brutsche*, 881 F.2d 427, 431 (7th Cir. 1989).

The defendants focus on the second element of the qualified immunity analysis.  As to Count 2, they argue that inmates assigned to a special housing unit had no clearly established right

4

to practice their religious beliefs by teaching or learning Arabic in 2011 and 2012.   As to Count 6, the defendants argue that inmates assigned to a special housing unit had no clearly established right to practice their religion by altering their prison uniforms in 2011 or 2012.

Chesser counters that his right to be free from invidious religious discrimination was clearly established by the Supreme Court in *Ashcroft v. Iqbal*, 556 U.S. 662 (2014) and other cases evaluating restrictions on grooming, religious jewelry, religious diets, religious services, and religious publications.   *Iqbal* was decided in 2014, and focused on a claim brought by a detainee assigned to an administrative maximum special housing unit designed to prevent detainees of "high interest" from communicating with the general prison population or the outside world. Iqbal alleged that he was locked down 23 hours a day.   His out-of-cell time was spent in handcuffs and leg irons with a four-officer escort.   The Supreme Court's decision does not clearly establish Chesser's right to exercise his religion in a CMU by learning and teaching Arabic and/or by wearing short pants.   The undersigned has reviewed the other cases cited in Chesser's brief and finds that those decisions did not place the defendants on notice that their conduct violated his First Amendment right to exercise his religion by doing the things he wished to do.   Chesser's remarks about religious discrimination miss the mark, as Counts 2 and 6 have been properly identified as free exercise claims, not religious discrimination claims (Doc. No. 8).

The defendants have demonstrated that their qualified immunity defense has substantial merit on Counts 2 and 6.   At the relevant time, Chesser did not have a clearly established First Amendment right to exercise his religious beliefs by teaching Arabic, learning Arabic, and/or by wearing shortened pants in the CMU.

5

### III.    Bivens Claims – Fifth Amendment Equal Protection

The defendants seek a ruling in their favor on Counts 5 and 23, Chesser's equal protection

claims, asserting their affirmative defense of qualified immunity (Doc. No. 112, p. 15-18).

Chesser can present evidence that he was singled out for disparate treatment because he wished to

gather with other inmates to study a foreign language (Arabic) for religious reasons, while other

inmates were allowed and even encouraged to congregate to study a foreign language for secular

reasons.   He further states that the defendants enforced a policy restricting only Islamic inmates

from wearing pants above the ankles, while non-Muslims were permitted to engage in the same or

similar behavior (Doc. No. 132, pp. 4-8).

As to these Counts, the argument in favor of qualified immunity is underdeveloped.   The

cited cases (*Ware v. Garnett*, *Garraway v. Lappin, Vann v. Fischer, Godbey v. Wilson*), are not

helpful because the plaintiffs in those cases were either not asserting equal protection rights or the

cited decision was reached by an out-of-Circuit District Court on facts that are not closely

analogous to those considered here and do not appear to demonstrate a trend.   Plaintiff has

pointed to cases, such as *Grayson v. Schuler*, 666 F.3d 450 (7th Cir. 2012)(disparate treatment of

African Hebrew Israelites and Rastafarians with dreadlocks), which suggest that the defendants

are not immune from a damage award for conduct amounting to impermissible religious

discrimination.   At this time, the undersigned is not persuaded that this affirmative defense has

substantial merit.

### IV.    Bivens Claims – First Amendment Right of Access to Courts

In Count 21, Chesser claims that he was deprived of access to the discovery materials in his

criminal case since July, 2010.   He claims that defendants Neumann and Roal rejected material

sent by his criminal attorneys on a hard drive and compact discs, which interfered with his effort to evaluate or file a motion to vacate his conviction under 28 U.S.C. § 2255.   Chesser seeks monetary damages or injunctive relief in the form of an order barring Neumann and Roal from censoring his criminal discovery.

These defendants first argue that Chesser's First Amendment access to courts claim is not cognizable under *Bivens*.   Chesser counters that the defense argument is undeveloped and that his right to have meaningful access to the courts is akin to his Eighth Amendment right recognized in *Carlson v. Green*, 446 U.S. 14 (1980).   The undersigned agrees with Chesser's first point: that the one paragraph in the brief does not present a well-developed challenge to the availability of a *Bivens* remedy on Chesser's access to court claim.   The defendants do not discuss whether Congress elected to provide a substitute, alternative remedy or whether special factors counsel hesitation in the absence of congressional action.   *Schweiker v. Chilicky*, 487 U.S. 412, 423 (1988).   The Court may expect some additional discussion of relevant facts and law before considering awarding summary judgment.   *United States v. Holm*, 326 F.3d 872, 877 (7th Cir. 2003)(observing that undeveloped arguments are considered waived).

These defendants may also be suggesting that the factual allegations in Chesser's complaint are deficient under the applicable pleading standard (Doc. No. 138, pp. 11-12).   In June, 2013, Judge Gilbert screened Chesser's complaint pursuant to 28 U.S.C. § 1915A.   That statute directs the Court to review and dismiss any portion of a pleading that fails to state a claim upon which relief could be granted.   28 U.S.C. § 1915A(b)(1).   The legal standard used when a pleading is screened under § 1915A is the same as the legal standard used when a pleading is challenged as deficient under Rule 12(b)(6).   *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011).

Upon a careful reading of Judge Gilbert's June 12, 2013, Memorandum and Order, the allegations supporting Count 21 were evaluated under the applicable pleading standard.   Judge Gilbert considered Chesser's factual allegations and found that those allegations passed muster. This aspect of the motion is moot, as it seeks a pleading review that has already been performed via the statutory screening process.

Defendant Neumann seeks a ruling in his favor, claiming that he was not personally involved in any decision to deny Chesser access to his criminal discovery (Doc. No. 138, p. 12). Chesser responds that Neumann may be held liable as Roal's accomplice (Doc. No. 179, p. 2).

The fundamental right of access to the courts requires that prison authorities provide prisoners with the tools necessary to attack their sentences, directly or collaterally.   *Lewis v. Casey*, 518 U.S. 343, 355 (1996): *Bounds v. Smith*, 430 U.S. 817, 828 (1977).   To prove a violation of this right, Chesser must demonstrate that Roal hindered his effort to pursue a nonfrivolous legal claim and that he suffered some actual concrete injury.   *Lewis*, 518 U.S. at 350-54.   In order to be liable under a *Bivens* theory, there must be individual participation and involvement by each defendant in the deprivation of constitutional rights.   *Gossmeyer v. McDonald*, 128 F.3d 481, 494 (7th Cir. 1997).   Neumann can be liable if the offensive conduct occurred at his direction or with his knowledge and consent.   *Id*.

The materials submitted by the parties demonstrate that Neumann may have acted as messenger when he notified Chesser that discovery material sent by his attorney had been rejected. There is no evidence that Neumann personally reviewed or rejected any material submitted to the warden by Chesser's legal team (Doc. Nos. 138-4, 138-5, 179-1, pp. 3-8, 11-31).   Defendant Neumann was not personally involved in the offensive conduct and is entitled to judgment in his favor on Count 21.

8

Roal seeks a ruling in her favor on her qualified immunity defense, suggesting that a denial of access to criminal discovery was not a violation of clearly established law (Doc. No. 138, pp. 7-8, 15).

On October 20, 2010, while represented by attorneys Michael Nachmanoff and Brian Mizer, Chesser pled guilty to communicating threats, soliciting others to threaten violence, and providing material to support terrorists.  He was sentenced on February 24, 2011 (Doc. Nos. 112-2; 179-2, p. 7).   In May, 2011, Chesser asked his attorneys to provide criminal discovery on a hard drive.   He made this request for the purpose of deciding whether he should file a motion to vacate his sentence under 28 U.S.C. § 2255.   Between February and July, 2012, defendant Roal exchanged communications with Nachmanoff, informing him that Chesser would not be allowed to have access to a portable hard drive or 15 compact discs received from counsel due to security concerns (Doc. No. 179-1, pp. 11-18; Doc. No. 138-4).   Between January and July, 2015, Chesser exchanged correspondence with attorneys Joyce Ellen Rosendahl and Geremy Kamens.   These attorneys provided legal services to Chesser regarding his § 2255 motion.   On July 8, 2015, Kamens sent Chesser his case file and provided Rosendahl with a copy of a June 23, 2015, legal memorandum prepared by Marian Messing (Doc. Nos. 180, 183).   At some point, Chesser prepared a draft motion to vacate or set aside his sentence (Doc. No. 179-2).

These materials suggest that Chesser might have a nonfrivolous argument for § 2255 relief, assuming that the District Court determines that Chesser timely filed a § 2255 motion.  The materials do not indicate whether Chesser has filed a motion asking for § 2255 relief or whether that motion has been accepted as timely filed.

9

The undersigned is not aware of any decisions finding a First Amendment access to courts violation when an inmate who has pled guilty to the crimes he stands convicted of is not allowed to receive copies of criminal discovery from his attorneys.  As to these facts, the contours of the right to meaningful access to courts were not sufficiently clear in 2012 such that Roal would have understood that any rejection of copies of criminal discovery in the possession of Chesser's attorneys violated that right.  Roal did not conceal the facts of Chesser's crimes or impede or block Chesser from performing legal research or communicating with the attorneys who had his case file.  In these circumstances, a reasonable prison official would not believe that Chesser lacked the tools he needed to challenge his guilty plea, convictions, and/or  sentences.  As to Count 21, the qualified immunity defense has substantial merit.

## V.      Counts 16, 24, 25

The defendants also seek judgment in their favor on Chesser's claims regarding retaliation, conspiracy, and a Salafi Imam.  Those claims have been dismissed (Doc. No. 194). Accordingly, this aspect of the motion is now moot.

## VI.      Consideration of Judgment on the Responses

Chesser has asked for consideration of judgment on the responses (Doc. No. 186).  That request is opposed on the ground that the dispositive motion deadline expired on May 8, 2015 (Doc. No. 189).  Without identifying specific Counts, Chesser suggests that the Court should consider awarding him injunctive relief on his "religious claims" and assessing compensatory, future, and punitive damages against defendants Neumann and Roal on his "access" claim. Alternatively, he seeks an injunction barring Neumann and Roal from interfering with anticipated post-conviction litigation.  He proposes an injunction enjoining "enforcement of BOP Program

10

Statement 8360.011 § 7(a) against Muslims trying to study Arabic" and an order directing the defendants to "allow Muslims to purchase books on learning Arabic (as they currently do) or to provide high quality and modern resources for that pursuit."   The proposed injunction would also require the defendants to "find a way to accommodate religious fasts throughout the year for Chesser" and "accommodate Chesser's need to have access to a qualified Islamic scholar whom he generally trusts."

Portions of this motion are moot; the remainder should be denied.   The moot portions include Chesser's claims regarding a Salafi religious advisor (Counts 24 and 25).   Those counts have been dismissed (Doc. No. 194).   Also moot are Chesser's requests for injunctive relief.   The conditions of Chesser's confinement are no longer in the control of these defendants following Chesser's transfer to ADX-Florence and the defendants' retirements/job changes.   As to the remaining arguments, Chesser had a fair opportunity to prepare and file a well-supported Rule 56 motion prior to the expiration of the deadline for dispositive motions.   There is no showing of good cause for an extension of that deadline.   Fed. R. Civ. P. 16(b)(4).   Moreover, the Court is not persuaded that relevant facts are undisputed such that summary judgment would be entered in Chesser's favor on the remaining claims and defenses.

## VII.   Conclusion

IT IS RECOMMENDED that the First Motion for Summary Judgment (Doc. No. 112) be GRANTED in part, DENIED in part, and declared MOOT in part.   At the close of this case, judgment should be entered against plaintiff Zachery Chesser and in favor of defendants Roal, Rivas, Cardona, Roloff, Neumann, and Walton on Counts 2 and 6.   The motion should be denied as to Counts 5 and 23.   The motion is moot as to Counts 24 and 25.

IT IS FURTHER RECOMMENDED that the Second Motion for Summary Judgment (Doc. No. 113) be GRANTED.   Counts 1, 13, and 14 should be dismissed as moot.

IT IS FURTHER RECOMMENDED that the Third Motion for Summary Judgment (Doc. No. 138) be GRANTED in part and declared MOOT in part.   At the close of this case, judgment should be entered against plaintiff Zachery Chesser and in favor of defendants Roal, Rivas, Cardona, Roloff, Neumann, and Walton on Count 21.   The motion is moot as to Count 16.

IT IS FURTHER RECOMMENDED that the motion to consider judgment on the responses (Doc. No. 186) be DENIED.

If these recommendations are adopted, the following claims will remain for trial:

Count 5 against Rivas, Walton, Roal, Cardona, Neumann, and Roloff.

Count 23 against Rivas, Walton, Roal, Neumann, and Roloff.

**SUBMITTED:**   <u>**July 28, 2016**</u> .

<u>  s/Philip M. Frazier  </u>
**PHILIP M. FRAZIER**
**UNITED STATES MAGISTRATE JUDGE**