UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

ZACHARY CHESSER,

     Plaintiff,

          v.

HENRY RIVAS, JEFFREY WALTON,
WENDY ROAL, STEVEN CARDONA,
PAUL KELLY, MILTON NEUMANN,
ROBERT ROLOFF, MCCLEARY, WINN,
LESLIE SMITH, APRIL CRUITT, T.
CAPALDO, STEPHEN COLT and J.
SIMMONS,

     Defendants.

Case No. 13-cv-456-JPG-RJD

**MEMORANDUM AND ORDER**

     This matter comes before the Court on the Report and Recommendation ("Report") (Doc.
214) of now-retired Magistrate Judge Philip M. Frazier recommending that the Court grant in part,
deny in part, and declare moot in part the defendants' first motion for summary judgment (Doc.
112); grant the defendants' second motion for summary judgment (Doc. 113); grant in part and
declare moot in part the defendants' third motion for summary judgment (Doc. 138); and deny
Chesser's motion to consider judgment on the responses (Doc. 186).   Chesser (Doc. 217) and the
defendants (Doc. 220) have filed objections to the Report, and Chesser has responded to the
defendants' objections (Doc. 221).

     The Court may accept, reject or modify, in whole or in part, the findings or
recommendations of the magistrate judge in a report and recommendation.   Fed. R. Civ. P.
72(b)(3).   The Court must review *de novo* the portions of the report to which objections are made.
*Id.*   "If no objection or only partial objection is made, the district court judge reviews those
unobjected portions for clear error."   *Johnson v. Zema Sys. Corp.*, 170 F.3d 734, 739 (7th Cir.
1999).

Chesser filed this multi-count action in May 2013 complaining of various aspects of his confinement in the communication management housing unit ("CMU") at the United States Penitentiary at Marion, Illinois ("USP-Marion") from May 2, 2011, to June 2, 2014.[1]   The only counts remaining in this case are Counts 1, 2, 5, 6, 13, 14, 21 and 23, which the Court will address in turn.

<u>Counts 1, 13 and 14:   Religious Freedom Restoration Act</u>

Chesser complains about the rule restricting him from teaching or learning Arabic (Count 1), the failure to provide access to a qualified Imam for his religious guidance (Count 13), and the failure to accommodate some of his religious fasts (Count 14).   He claims that each of these instances violated the Religious Freedom Restoration Act ("RFRA"), 42 U.S.C. § 2000bb-1, because it substantially burdened his exercise of religion without being the least restrictive means of furthering a compelling governmental interest.

In the Report, Magistrate Judge Frazier noted that RFRA provides only injunctive, not monetary, relief.   He further found Chesser had not shown he was likely to be retransferred to the CMU at USP-Marion or that, if he were transferred there, he would have a current dispute with the defendants, who have either retired or taken new positions and are no longer assigned to the USP-Marion CMU.   Magistrate Judge Frazier concluded that these counts are therefore moot.

In his objection, Chesser maintains there is a fifty-fifty chance he will return to the USP-Marion CMU when he is released from ADX-Florence because there are only two CMU units in the Bureau of Prisons ("BOP").   He points to several cases holding that a transfer out of a CMU does not moot his claims for injunctive relief where the factors supporting placement in a CMU still exist.   *See, e.g., Aref v. Holder*, 953 F. Supp. 2d 133, 144 (D.D.C. 2013).

---

[1] Chesser is now housed at the United States Penitentiary – Administrative Maximum at Florence, Colorado ("ADX-Florence").

The Court has reviewed the matter *de novo* and finds that, while it is possible Chesser could return to the USP-Marion CMU, he has not shown it is likely that he will be retransferred to the USP-Marion CMU to face the same conditions for which the current defendants could provide relief.   The defendants have shown that Chesser still has several steps to complete before leaving his current placement at ADX-Florence and that there are several options for where he would then go.   They have further shown that at least one of the objectionable policies in the USP-Marion CMU – regarding learning Arabic – has been changed since Chesser was housed there.   There is insufficient evidence to suggest it is likely Chesser will again face the same conditions he complains about in Counts 1, 13 and 14.   Additionally, the defendants are no longer connected with the USP-Marion CMU and are therefore unable to change any conditions in that unit.

<u>Counts 2 and 6:   First Amendment Free Exercise Claims</u>

Chesser complains about the rules restricting him from teaching or learning Arabic (Count 2) and prohibiting him from wearing shortened pants (Count 6).   He brings these counts under *Bivens v. Six Unknown Names Agents of the Federal Bureau of Narcotics*, 403 U.S. 388, 397 (1971), claiming that each of these rules violated his First Amendment right to freely exercise his religion because it placed a substantial burden on his religious exercise without sufficient justification.

In the Report, Magistrate Judge Frazier found that the defendants are entitled to qualified immunity because it was not clearly established at the time the defendants enforced these rules that doing so would violate Chesser's constitutional rights.   In coming to this conclusion, Magistrate Judge Frazier examined *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), noted that it was decided after the events in this case and had nothing to do with teaching or learning Arabic or altering prison uniforms.   He also found other cases cited by Chesser did not clearly establish the conduct alleged in this case was unconstitutional

3

In his objection, Chesser argues the defendants are not entitled to qualified immunity, again pointing to *Iqbal* and other cases as clearly establishing the relevant First Amendment law.

The Court has reviewed the matter *de novo* and notes that Magistrate Judge Frazier was incorrect to find *Iqbal* was decided in 2014, after the conduct at issue in this case.   It was actually decided in 2009, so if it clearly established the law, it would have done so by the time of the defendants' conduct in this case.

However, as Magistrate Judge Frazier found, the issues in *Iqbal* were sufficiently different than the issues in this case such that a reasonable official in the particular situation faced by the defendants would not have known their conduct violated the free exercise clause.   *Iqbal* involved the designation of harsh confinement conditions on the basis of race, religion and/or national origin.   *Id.* at 668-69.   The principles established by *Iqbal* related to the need to plead facts plausibly suggesting intentional discrimination in designation decisions.   *Iqbal* did not address the specific conduct or circumstances in this case or anything like it – restricting Chesser from teaching or learning Arabic and from wearing shortened pants where those things are asserted to pose a danger to the security of a prison unit housing inmates whose communications must be monitored for security reasons.   *Iqbal* did not establish that such conduct constituted a substantial burden on an inmate's exercise of his religion without a legitimate governmental interest, the critical inquiry in a free exercise claim.   *See Thompson v. Holm*, 809 F.3d 376, 379-80 (7th Cir. 2016).   Likewise, none of the other cases cited by Chesser clearly establishes that enforcing these rules in the defendants' situation violated Chesser's free exercise rights.   To the extent that the defendants' conduct may have violated constitutional guarantees by treating one religion differently than another, those claims survive in Counts 5 and 23.

Counts 5 and 23:   Fifth Amendment Equal Protection Claim

In this *Bivens* claim, Chesser complains that the rules restricting him from teaching or

4

learning Arabic (Count 5) and prohibiting him from wearing shortened pants (Count 23) also violated the equal protection guarantee in the due process clause of the Fifth Amendment.   With respect to Count 5, Chesser believes he was singled out for disparate treatment because he wanted to gather with other Muslim inmates to learn Arabic while other inmates were allowed to gather to study foreign languages.   With respect to Count 23, Chesser claims the defendants only enforced the shortened pants rule against Islamic inmates and not against non-Muslims.

In the Report, Magistrate Judge Frazier found the defendants had underdeveloped their qualified immunity argument and that Chesser had pointed to a case, *Grayson v. Schuler*, 666 F.3d 450 (7th Cir. 2012), which established the unconstitutionality of discrimination in hairstyles based on religion, a situation sufficiently similar to the allegations in Counts 5 and 23 to put the defendants on notice their alleged conduct was unconstitutional.

The defendants object to this portion of the Report on the grounds that Magistrate Judge Frazier gave short shrift to the first requirement for qualified immunity – that the defendants' conduct amounted to a constitutional violation – by ignoring whether Chesser was intentionally or purposefully treated differently from other inmates based on a suspect classification or a fundamental right.   They also fault Magistrate Judge Frazier with placing the burden on them to affirmatively show that the constitutional right was not clearly established at the time as opposed to placing the burden on Chesser to show that it was.

The Court has reviewed the matter *de novo* and finds that the defendants' qualified immunity argument dealt almost exclusively with the question of whether a First Amendment free exercise right to teach and/or learn Arabic or to wear shortened pants was clearly established at the time of their conduct.   As discussed above, those rights were not clearly established.   However, only obliquely do the defendants touch on the question of whether it was constitutional to treat Muslims wanting to learn or teach Arabic differently than other inmates wanting to learn or teach

foreign languages, or to treat Muslim inmates wanting to shorten their pants differently from other inmates wanting to shorten their pants or otherwise alter their prison uniforms.   Chesser's complaints in Counts 5 and 23 center on discriminatory application of the "no learning/teaching" or "no shortened pants" rules in violation of equal protection guarantees in the Fifth Amendment due process clause.   Magistrate Judge Frazier is correct the defendants have not adequately developed their qualified immunity argument as to those claims.

Even if the defendants had not waived this argument by failing to develop it in their motion, the Court would find qualified immunity does not apply.   Chesser has provided affidavit testimony, based on personal knowledge from his own observations, that the two rules in issue were intentionally not applied in the same way to different categories of inmates, and the defendants have not offered any evidence showing that such different treatment was justified. That Chesser's affidavit may be "self-serving," as argued by the defendants, does not mean it cannot constitute evidence to withstand summary judgment as long as it is based on personal knowledge.   *See Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) ("Provided that the evidence meets the usual requirements for evidence presented on summary judgment – including the requirements that it be based on personal knowledge and that it set forth specific facts showing that there is a genuine issue for trial – a self-serving affidavit is an acceptable method for a non-moving party to present evidence of disputed material fact.").

Additionally, as Magistrate Judge Frazier noted, the law was clearly established at the time that purposeful disparate treatment on the basis of religion without sufficient justification violated equal protection guarantees.   *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Grayson v. Schuler*, 666 F.3d 450 (7th Cir. 2012); *Sasnett v. Litscher*, 197 F.3d 290 (7th Cir. 1999)..

<u>Count 21:   Access to Courts Claim</u>

Chesser complains in this *Bivens* claim that he has been deprived of his right of access to

the courts when defendants Roal and Neumann did not allow him to access discovery materials on

a hard drive or on fifteen compact discs sent to him by his attorneys in his criminal case.   He

claims this interfered with his ability to evaluate or file a motion to vacate his sentence under 28

U.S.C. § 2255.

In the Report, Magistrate Judge Frazier rejected the defendants' legal argument that there

is no remedy available under *Bivens* for violation of the First Amendment, finding the argument

insufficiently developed.   Magistrate Judge Frazier further rejected the defendants' request for

judgment based on insufficient pleading because the Court had already conducted a review of the

pleading earlier in this case under 28 U.S.C. § 1915A.   Nevertheless, Magistrate Judge Frazier

found no evidence Neumann was personally involved in the decision to prohibit Chesser from

reviewing his criminal discovery material.   As for Roal, Magistrate Judge Frazier found that,

although there is evidence she was personally involved in denying Chesser access to his criminal

discovery, it was not clearly established at the time that, in the circumstances that existed –

Chesser's guilty plea, criminal discovery in the possession of his criminal attorney, Chesser's

ability to do legal research and to communicate with attorneys who possessed the discovery –

Roal's conduct violated Chesser's constitutional rights.   Accordingly, he found Roal was entitled

to qualified immunity.

In his objection, Chesser agrees that his request for injunctive relief on Count 21 is moot in

light of the fact that he has filed a § 2255 motion, and he agrees that summary judgment should be

granted for Neumann.   He maintains, however, that Roal's denying him his case discovery

prevented him from accessing the court in a § 2255 proceeding.   Chesser claims that the right to

due process by making a knowing and voluntary plea was clearly established at the time he was

denied access to the discovery, and that Roal should have known failing to allow him access to his

discovery would have resulted in a violation of that due process right by allowing his conviction to

go unchallenged.

The Court first reviews the sequence of events as revealed by the evidence in the file.   At first, Roal denied permission for Chesser to receive the discovery on a hard drive, which could not be viewed on the computers used by inmates, but indicated the material could be send in paper form.   When the information was later sent on fifteen compact discs, Roal reviewed the content of the discs with staff specializing in information technology, counter terrorism and the law and determined that the content of the discs was a security risk to the prison.   At the time the discs arrived at the prison and Roal made her decision, she believed Chesser's one-year deadline for filing a § 2255 motion had expired.   Later, Chesser filed a § 2255 motion with the assistance of counsel.   That motion remains pending.

The Court has reviewed the question *de novo* and finds that Magistrate Judge Frazier was correct in the Report.   Chesser has not cited any cases from the Supreme Court, the Seventh Circuit Court of Appeals or any other jurisdiction clearly indicating Roal's actions – withholding material from Chesser that she believed was an institutional security risk and that she believed could no longer be useful in a collateral challenge to his criminal sentence while Chesser retained access to counsel and was able to do legal research – were unconstitutional as of 2012, when Roal made her decision.   It is Chesser's burden to show the law clearly established at the time that an official's conduct was unconstitutional and that a reasonably competent official would have known that.   *Mustafa v. City of Chi.*, 442 F.3d 544, 548 (7th Cir. 2006).   He has simply failed to make this showing and, accordingly, Roal is entitled to qualified immunity.[2]

---

[2] The Court also believed this access to the courts claim may be barred by *Heck v. Humphrey*, 512 U.S. 477, 486-86 (1994), which held that a convicted criminal cannot not bring a § 1983 civil suit where a civil judgment would necessarily imply the invalidity of his conviction until that conviction is overturned.   *See Burd v. Sessler*, 702 F.3d 429, 434-35 (7th Cir. 2012) (finding access to courts damages claim barred by *Heck* where inmate was denied access to law library so he could prepare petition to withdraw guilty plea); *Hoard v. Reddy*, 175 F.3d 531, 534 (7th Cir.

<u>Counts 16, 24 and 25</u>

Magistrate Judge Frazier noted that the defendants' request for summary judgment on these counts was moot in light of the fact that these claims have already been dismissed from this case.   No party objects to this part of the Report, which is not clearly erroneous and will therefore be adopted.

<u>Consideration of Judgment on the Responses</u>

Magistrate Judge Frazier considered Chesser's request for injunctive relief on his "religious" claims and for injunctive and monetary relief, including compensatory and punitive damages, on his "access" claims.   Magistrate Judge Frazier recommends rejecting some of Chesser's requests as moot because they address dismissed claims or because they seek injunctive relief the defendants are no longer in a position to provide.   He recommends denying the remainder of the requests because they seek judgment beyond the dispositive motion deadline and because there appear to be disputed issues of material fact that would preclude summary judgment for Chesser.

Chesser's requests for injunctive relief were addressed in conjunction with his RFRA claims in Counts 1, 13 and 14 and in his access to the courts claim in Count 21.   No party objects to the Report with respect to its recommended disposition of the remainder of Chesser's motion. The Report is not clearly erroneous in this regard and will therefore be adopted by the Court.

For the foregoing reasons, the Court:

- **ADOPTS** the Report (Doc. 214) **AS MODIFIED** by this order to correct the date of the *Iqbal* decision to 2009;

- **OVERRULES** Chesser's (Doc. 217) and the defendants' (Doc. 220) objections;

---

1999) ("[W]here the prisoner is complaining about being hindered in his efforts to get his conviction set aside, the hindrance is of no consequence if the conviction was valid, and so he cannot get damages until the conviction is invalidated").   This issue was not addressed by either of the parties or by Magistrate Judge Frazier.

- **GRANTS in part, DENIES in part**, and **DECLARES MOOT in part** the defendants' first motion for summary judgment (Doc. 112);

- **GRANTS** the defendants' second motion for summary judgment (Doc. 113);

- **GRANTS in part** and **DECLARES MOOT in part** the defendants' third motion for summary judgment (Doc. 138);

- **DENIES** Chesser's motion to consider judgment on the responses (Doc. 186); and

- **DIRECTS** the Clerk of Court to enter judgment as follows at the close of the case:

  - On Counts 2 and 6, against Chesser and in favor of Roal, Rivas, Cardona, Roloff, Neumann, and Walton;

  - Counts 1, 13 and 14 are dismissed as moot; and

  - On Count 21, against Chesser and in favor of defendants Roal and Neumann.

Count 5 against Roal, Rivas, Cardona, Roloff, Neumann and Walton and Count 23 against Roal, Rivas, Roloff, Neumann and Walton remain for trial.   The Court further **ORDERS** the parties to submit a proposed final pretrial order to Magistrate Judge Reona J. Daly's chambers on or before November 30, 2016.   Magistrate Judge Daly will then hold a final pretrial conference at which the parties should be prepared to discuss the use of videoconferencing for the trial of this case and coordination of this trial with the trial of *Chesser v. Walton*, 12-cv-1198-JPG-RJD, to minimize transportation needs and security risks.   The current final pretrial conference and trial dates before Judge Gilbert are **VACATED** and will be reset following Magistrate Judge Daly's final pretrial conference.

**IT IS SO ORDERED.**
**DATED: November 2, 2016**

s/ J. Phil Gilbert
**J. PHIL GILBERT**
**DISTRICT JUDGE**